## LYNG *v.* MICHIGAN.

ERROR TO THE SUPREME COURT OF THE STATE OF MICHIGAN.

No. 1219. Submitted March 19, 1890. — Decided April 28, 1890.

Following *Leisy* v. *Hardin, ante,* 100, the judgment of the court below in this case is reversed.

Plaintiff in error was prosecuted and convicted in the Circuit Court for Iron County, Michigan, under an information alleging "that on the 19th day of July, in the year of our Lord one thousand eight hundred and eighty-eight, at the village of Iron River, in said Iron County, Henry Lyng, then and there being, was a person whose business consisted in part of selling at wholesale brewed and malt liquors, (not proprietary patent medicine,) as agent for Franz Hagemeister and Henry Hagemeister, copartners doing business in the city of Green Bay, Wisconsin, under the firm name of Hagemeister & Son, without he or they having paid in full or in part the tax required by law to be paid upon the business, neither he nor they being druggists selling liquors for chemical, medicinal or sacramental purposes only and in strict compliance with the law."

The case went to the Supreme Court of Michigan on exceptions, and the conviction was affirmed, and the case remanded to the Circuit Court with instructions to proceed to judgment. This was done accordingly, and the Supreme Court having affirmed the judgment, the cause was thereupon brought to this court by writ of error.

The opinion of the Supreme Court is to be found in 42 Northwestern Reporter, 139.

The trial in the Circuit Court was had upon the following facts agreed:

" 1. Franz Hagemeister and Henry Hagemeister are citizens of the United States of America, and reside at the city of Green Bay, in the State of Wisconsin, and are engaged in the manufacture of lager beer, under the name of 'Hagemeister

& Son,' at Green Bay aforesaid, where they have a brewery for the manufacture thereof.

"2. Such lager beer is brewed liquor within the meaning of act No. 313 of the laws of Michigan for 1887.

"3. Said Hagemeister & Son own a warehouse in the village of Iron River in the township of Iron River, in the county of Iron and State of Michigan, where they store quantities of their lager beer so made by them at Green Bay aforesaid, and from there shipped to their said warehouse in said village of Iron River, to be there stored and disposed of.

"4. The defendant, Henry Lyng, is employed by said Hagemeister & Son as their agent, on a regular salary, to look after their said warehouse, to take orders for and deliver said beer, so manufactured and stored, in quantities exceeding three gallons, and to collect and remit the proceeds of the sales thereof to said Hagemeister & Son, and was so employed on the 19th day of July, 1888.

"5. On the 19th day of July, 1888, at the village of Iron River, in the county of Iron and State of Michigan, said defendant, in the course of his said employment by Hagemeister & Son, did deliver from said warehouse to Martin Lally, and to divers other persons, all of whom paid him therefor, certain of said lager beer, so made and shipped by Hagemeister & Son from Green Bay aforesaid, in quantities exceeding three gallons. All of said lager beer was so delivered in the original packages in which it had been shipped. The defendant sold no other liquors.

"6. Neither the said defendant nor the said Hagemeister & Son, or either of them, have paid any tax in the village of Iron River aforesaid on the business of selling or keeping for sale malt liquors at wholesale or at wholesale and retail, nor given any bond such as is mentioned in act No. 313 of the Public Acts of Michigan for 1887."

Sections 1, 2, 4, 7, and 24, of act No. 313 of Public Acts of Michigan, 1887, p. 445, *et seq.*, are as follows:

"SECTION 1. *The People of the State of Michigan enact,* That in all townships, cities and villages of this State there shall be paid annually the following tax upon the business of

manufacturing, selling or keeping for sale, by all persons whose business, in whole or in part, consists in selling or keeping for sale, or manufacturing, distilled, or brewed or malt liquors or mixed liquors, as follows: Upon the business of selling or offering for sale spirituous or intoxicating liquors, or mixed liquors by retail, or any mixture or compound, excepting proprietary patent medicines, which in whole or in part consist of spirituous or intoxicating liquors, and any malt, brewed or fermented liquors, five hundred dollars per annum; upon the business of selling only brewed or malt liquors at wholesale or retail, or at wholesale and retail, three hundred dollars per annum; upon the business of selling spirituous or intoxicating liquors at wholesale, five hundred dollars; or at wholesale and retail, eight hundred dollars per annum; upon the business of manufacturing brewed or malt liquors for sale, sixty-five dollars per annum; upon the business of manufacturing for sale spirituous or intoxicating liquors, eight hundred dollars per annum. No person paying a tax on spirituous or intoxicating liquors under this act shall be liable to pay any tax on the sale of malt, brewed or fermented liquors. No person paying a manufacturer's tax on brewed or malt liquors under this act shall be liable to pay a wholesale dealer's tax on the same.

"Sec. 2. Retail dealers of spirituous or intoxicating liquors, and brewed, malt and fermented liquors shall be held and deemed to include all persons who sell any of such liquors by the drink, and in quantities of three gallons or less, or one dozen quart bottles or less, at any one time, to any person or persons. Wholesale dealers shall be held and deemed to mean and include all persons who sell or offer for sale such liquors and beverages in quantities of more than three gallons, or more than one dozen quart bottles, at any one time, to any person or persons. No tax imposed under this act shall be required from any person for selling any wine or cider made from fruits grown or gathered in this State, unless such wine or cider be sold by the drink as other beverages are."

"Sec. 4. Every person engaged in, or intending to engage in, any business named in section one of this act, and requiring

the payment of any tax mentioned in said section one, shall, on or before the first day of May in each year, make and file with the county treasurer in the county where it is proposed to carry on such business, a statement in writing and on oath, showing the name and residence of such person, the ward, village or township in which it is proposed to carry on such sale or manufacture, and the nature of the business which such person is engaged in, or is intending to engage in; and shall, on or before the first day of May in each year, pay to the said county treasurer, in advance, the taxes required by said section one for such business for the year commencing on said first day of May and ending on the thirtieth day of April next thereafter."

" SEC. 7. If any person or persons shall engage or be engaged in any business requiring the payment of a tax under section one of this act without having paid in full the tax required by this act, and without having the receipt and notice for such tax posted up as required by this act, or without having made, executed and delivered the bond required by this act, or shall in any manner violate any of the provisions of this act, such person or persons shall be deemed guilty of a misdemeanor, and, upon conviction thereof, if there is no specific penalty provided therefor by this act, shall be punished by a fine of not more than two hundred dollars and costs of prosecution, or by imprisonment in the county jail not less than ten days nor more than ninety days, or both such fine and imprisonment, in the discretion of the court. And in case such fine and costs shall not have been paid at the time such imprisonment expires, the person serving out such sentence shall be further detained in jail until such fine and costs shall have been fully paid: *Provided*, That in no case shall the whole term of imprisonment exceed six months. And any person or persons engaged in any business requiring the payment of a tax under section one of this act, who, after paying the tax so required, shall be convicted of the violation of any of the provisions of this act, shall thereby, in addition to all other penalties prescribed by this act, forfeit the tax so paid by him or them, and be precluded from con-

tinuing such business for the remainder of the year or time for which said tax was paid, and be debarred from again engaging in any business requiring the payment of a tax under section one of this act, or from becoming a surety or sureties upon any bond required under section seven of this act, for the period of one year from the time of such conviction. Each violation of any of the provisions of this act shall be construed to constitute a separate and complete offence, and for each violation on the same day, or on different days, the person or persons offending shall be liable to the penalties and forfeitures herein provided, and be precluded and debarred from continuing or engaging in any business requiring the payment of a tax under this act as aforesaid. And it shall be the duty of sheriffs, marshals, constables and police officers to forthwith close all saloons and other places where the business of manufacturing, selling or keeping for sale any of the liquors mentioned in section one of this act is being conducted, upon which business the tax required by said section one has not been paid in full, and in which the receipt mentioned in section five of this act shall not be posted up and displayed."

"SEC. 24. All persons engaged in the business of selling or keeping for sale any of the liquors mentioned in this act, whether as owner or as clerk, agent, or servant or employé, shall be equally liable as principals for any violation of any of the provisions of this act, and any person or principal shall be liable for the acts of his clerk, servant, agent or employé for any violation of the provisions of this act."

*Mr. Howard E. Thompson* for plaintiff in error.

*Mr. Edward Cahill* for defendant in error.

MR. CHIEF JUSTICE FULLER delivered the opinion of the court.

Under the statute in question, which is entitled " An act to provide for the taxation and regulation of the business of manufacturing, selling, keeping for sale, furnishing, giving or delivering spirituous or intoxicating liquors and malt, brewed

or fermented liquors or vinous liquors in this State, and to repeal all acts or parts of acts inconsistent with the provisions of this act," an annual tax is levied "upon the business of selling only brewed or malt liquors at wholesale or retail, or at wholesale and retail" of three hundred dollars, and "upon the business of manufacturing brewed or malt liquors for sale, sixty-five dollars per annum." The manufacturer of malt or brewed liquors made outside of the State of Michigan cannot introduce them into the hands of consumers or retail dealers in that State, without becoming subject to this wholesale dealer's tax of three hundred dollars per annum in every township, village or city where he attempts to do this. The manufacturer in the State need only pay the manufacturer's tax of sixty-five dollars, and is then exempt from paying the tax imposed on the wholesale dealer.

We have repeatedly held that no State has the right to lay a tax on interstate commerce in any form, whether by way of duties laid on the transportation of the subjects of that commerce, or on the receipts derived from that transportation, or on the occupation or business of carrying it on, for the reason that such taxation is a burden on that commerce, and amounts to a regulation of it, which belongs solely to Congress. *Leloup* v. *Mobile*, 127 U. S. 640, 648, and cases cited. In *Bowman* v. *Chicago and Northwestern Railway*, 125 U. S. 465, it was decided that a section of the Code of the State of Iowa, forbidding common carriers to bring intoxicating liquors into the State from any other State or Territory, without first being furnished with a certificate as prescribed, was essentially a regulation of commerce among the States, and not being sanctioned by the authority, express or implied, of Congress, was invalid because repugnant to the Constitution of the United States; and in *Leisy* v. *Hardin*, *ante*, 100, the judgment in which has just been announced, that the right of importation of ardent spirits, distilled liquors, ale and beer from one State into another, includes, by necessary implication, the right of sale in the original packages at the place where the importation terminates; and that the power cannot be conceded to a State to exclude, directly or indirectly, the subjects of inter-

state commerce, or, by the imposition of burdens thereon, to regulate such commerce, without congressional permission. The same rule that applies to the sugar of Louisiana, the cotton of South Carolina, the wines of California, the hops of Washington, the tobacco of Maryland and Connecticut, or the products, natural or manufactured, of any State, applies to all commodities in which a right of traffic exists, recognized by the laws of Congress, the decisions of courts and the usages of the commercial world. It devolves on Congress to indicat such exceptions as in its judgment a wise discretion may demand under particular circumstances. Lyng was merely the representative of the importers, and his conviction cannot be sustained, in view of the conclusions at which we have arrived.

*The judgment of the Supreme Court of the State of Michigan is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.*

JUSTICES HARLAN, GRAY and BREWER dissented upon the grounds stated in their opinion in *Leisy* v. *Hardin, ante,* 100.