The City of Huntington v. Mahan.

---

No. 17,691.

THE CITY OF HUNTINGTON v. MAHAN.

MUNICIPAL CORPORATION.—*City Ordinance Against Peddling With-out License.—Distributing Agent.—Interstate Commerce.*—A city ordinance prohibiting peddling without a license is an unlawful interference with interstate commerce as to a salaried distributing agent of a publishing firm in another State, where orders for books in several localities are sent to such firm by another salaried agent, and on being received by the latter are repacked and shipped to various localities for distribution. (See note at end of opinion.)

From the Huntington Circuit Court.

*Kenner & Lesh*, for appellant.

*E. E. Stevenson,* for appellee.

HACKNEY, J.—The appellee was charged and found guilty, before the appellant's mayor, of violating an ordinance of the city prohibiting peddling within said city without a license, as prescribed by said ordinance. On appeal to the circuit court there was a special answer by the appellee, a demurrer to which was overruled, and a special reply by the appellant, a demurrer to which was sustained, and upon a trial by the court the appellee was acquitted. The questions arising upon the rulings as to the special answer and special reply more fairly and fully arise upon the motion for a new trial which assigned, as causes therefor, that the finding was contrary to law and was contrary to the evidence. Without conflict the evidence established the following facts: During and prior to September and October, 1894, P. F. Collier & Co. were a firm of book publishers, located in and conducting their business, throughout various States, from the city of New York, in the State of New York.

In said months said firm had an agent, P. J. Flanady, located in the city of Indianapolis and had other agents traversing the various parts of this State soliciting purchasers and taking orders for the books so published by said firm and acting solely as the salaried agents of such firm. The Indianapolis agency, after receiving the orders for such books as the canvassing agents might secure, would combine numbers of such orders and forward them to P. F. Collier & Co., at New York City, which firm, in response to such orders, would ship to the Indianapolis agency, from New York City, the books so ordered. When the books so ordered and shipped were received at Indianapolis they were repacked in parcels to suit the orders from the various localities in Indiana and were shipped to such localities for distribution by salaried agents acting for P. F. Collier & Co., in such localities. The appellee, while acting as such distributing agent at the city of Huntington, on the 5th day of October, 1894, and while distributing to various purchasers such books, of the publications of said firm, as had been ordered by the citizens of said city, through one Gamble, another agent of said firm, during the month of September, 1894, was arrested for the violation of said ordinance. The books, being delivered by the appellee, had been received by him through orders and shipments as above described, and had not, prior thereto, gone into storage or become a part of the stock in trade in any business conducted wholly within this State.

The theory upon which the appellee was discharged by the lower court and that upon which the judgment of that court is here supported is that the appellee was engaged in interstate commerce, the regulation of which is reserved, by the federal constitution, to the Congress of

the United States and which is not the subject of regulation or restriction by State or municipal authority.

In the recent case of *City of South Bend* v. *Martin*, 142 Ind. 31 (29 L. R. A. 531), the question here presented was fully considered and many of the Federal and State decisions were reviewed. The rule there recognized was that if the goods, prior to their sale, had come into this State and had become here permanently fixed and mingled with the mass of property within this State, and, as such, were subjected to sale by present exposure and delivery their sale was not a transaction of interstate commerce, while, if they had not, at the time of their sale, come into this State, had not become mingled with the mass of property within this State, were not subject to inspection and delivery at the time of the sale, the soliciting of orders and the subsequent shipment and delivery from another State were transactions of interstate commerce. Upon this recognized rule there can be no doubt, under the facts here presented, that this case falls within the limits where State and municipal authorities have no control. In addition to the numerous cases cited in *City of South Bend* v. *Martin*, *supra*, see *In re Spain*, 47 Fed. Rep. 208; *In re Nichols*, 48 Fed. Rep. 164; *In re Tyerman*, 48 Fed. Rep. 167; *McLaughlin* v. *City of South Bend*, 126 Ind. 471; *Martin* v. *Town of Rosedale*, 130 Ind. 109.

The right of Congress to regulate interstate commerce "is co-extensive with the subject on which it acts and cannot be stopped at the external boundary of the State, but must enter its interior, and must be capable of authorizing the disposition of those articles which it introduces, so that they may become mingled with the common mass of property within the territory entered." *Brennan* v. *Titusville*, 153 U. S. 289; *Leisy* v. *Hardin*,

135 U. S. 100; *Gibbons* v. *Ogden*, 9 Wheat. 1; *Brown* v. *Maryland*, 12 Wheat. 419. The right to deliver goods sold when not within the State has the same immunity from State or municipal interference, by way of taxation, as the sale itself has. *In re Spain, supra.*

We conclude, therefore, that the record discloses no error, and the judgment of the circuit court is affirmed.

Filed December 12, 1895.

The effect of the interstate commerce law upon State regulations as to peddlers is the subject of a note to *Re Spain*, 14 L. R. A. 97; see also *South Bend* v. *Martin* (Ind.), 29 L. R. A. 531.