## THE STATE OF KANSAS v. A. L. HICKOX.

### No. 12,678. (68 Pac. 35.)

SYLLABUS BY THE COURT.

INTOXICATING LIQUORS—*Non-resident Salesman—Interstate Commerce.* A state law which places substantial restrictions upon the taking or soliciting of orders by a non-resident salesman for intoxicating liquors, to be purchased in and imported from another state, where such orders are subject to approval or rejection at the election of the non-resident merchant, is a burden upon interstate commerce, and, so far as the act applies to such cases, it is repugnant to the provisions of the federal constitution giving congress the power to regulate interstate commerce.

Appeal from Elk district court; G. P. AIKMAN, judge. Opinion filed March 8, 1902. *In banc.* Reversed.

*A. A. Godard,* attorney-general, *J. S. West,* and *W. A. McCausland,* county attorney, for The State.

*J. C. Rosenberger,* for appellant.

The opinion of the court was delivered by

JOHNSTON, J.: A. L. Hickox was prosecuted for taking orders for intoxicating liquors in violation of the prohibitory liquor law and was convicted upon two counts. The facts in the case are undisputed, and show that Hickox was a traveling salesman for Bernard Holzmark, a liquor merchant of Kansas City, Mo. Holzmark was a resident of Missouri, his office and place of business were in that state, and at no time had he any liquors for sale or other purpose in Kansas. Hickox was also a resident of Missouri, whose only authority was to solicit orders for liquors from persons in Kansas and elsewhere, which were to be transmitted to Holzmark, in Missouri, to be accepted or rejected as he might elect.

In October, 1900, Hickox went to Elk county, Kansas, and took orders for liquors from W. A. Kindall and George Buel, neither of whom was authorized to sell intoxicating liquors. They ordered the liquors for their personal use and not for sale to others, and both of them were regular customers of Holzmark and had frequently sent orders by mail to Holzmark for liquor in gallon packages without solicitation by any one. When the orders referred to were taken from Kindall and Buel, no money was paid or accepted by Hickox, but the orders were sent to his employer in Missouri for approval or rejection. The orders were accepted by Holzmark ; the liquors were selected from the stock in Missouri and placed on board the cars in Missouri for continuous interstate shipment to Kindall and Buel in Kansas, who in due time received the same. All orders taken by Hickox were taken subject to the approval of Holzmark at his business house in Kansas City, Mo., and he expressly reserved the right to reject any order which might be taken by Hickox. At the time Hickox took the orders he did not deliver any liquors to the persons ordering the same, nor did he have intoxicating liquors in Kansas in his possession or under his control which he could have used for such purpose.

The prosecution is based solely on section 12 of chapter 149, Laws of 1885 (Gen. Stat. 1901, §2479), which is as follows :

"Any person who shall take or receive any order for intoxicating liquors from any person in this state, other than a person authorized to sell the same, as in this act provided, or any person who shall directly or indirectly contract for the sale of intoxicating liquors with any person in this state, other than a person authorized to sell the same, shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be

punished therefor as provided in this act for selling intoxicating liquors.''

The single question presented by this appeal is whether the quoted section, as applied to the admitted facts, is in violation of section 8 of article 1 of the constitution of the United States, providing that the congress shall have sole power to regulate commerce among the several states. This power is national in its character, and therefore must be national in its operation. As to interstate commerce, it is said that the United States are but one country and therefore there can be but one system and one control, and, in the nature of things, that control must be exclusive. In *Brennan v. Titusville*, 153 U. S. 289, 14 Sup. Ct. 829, 38 L. Ed. 719, Mr. Justice Brewer said:

''We think it must be considered, in view of a long line of decisions, that it is settled that nothing which is a direct burden upon interstate commerce can be imposed by the state without the assent of congress, and that the silence of congress in respect to any matter of interstate commerce is equivalent to a declaration on its part that it should be absolutely free.''

The state is without power, therefore, to legislate in respect to such commerce, and legislation as to domestic concerns which places restrictions or impositions on interstate commerce is necessarily inoperative and void to the extent of such restrictions and impositions.

Conceding, then, as it must be, that the exclusive power over national commerce is confided to the federal government, and that a state cannot, in the exercise of its police or other powers, interfere with the supreme control of congress, we have the question whether the restriction upon taking orders for liquors to be sold and shipped from another state into Kansas is a regulation of commerce. On the side of the state,

it is argued that the statute in question does not purport to affect interstate commerce nor to regulate the conduct of any one beyond the boundaries of the state, but that it aims only to punish acts done within the state deemed to be deleterious to the welfare of the people, and that, at most, it can have but an incidental effect on commerce. In contending that the section is not an interference with interstate commerce, the assistant attorney-general quaintly says :

"It does not seek to prevent the man from Missouri from shipping his 'legitimate article of commerce' into Kansas. It simply says that while we may have to submit to the importation and energizing power of the commodity, we shall insist that its vendor stay on his own side of the state line and not send or come over here and transact the business which results in the importation. We try to love our neighbors, but we make no profession of loving them so much better than ourselves as to permit them to do what we refrain from doing on our own soil."

Contending further that intoxicating liquor is not on a footing with ordinary commodities, and is not to be regarded as an article of commerce, he says :

"Whisky in the abstract, whisky generically, is by the decree of public sentiment quarantined along with smallpox, leprosy, and cholera. It is an Ichabod, forsaken, cast out and despised, a Czolgosz among the commodities of commerce, and yet we are enjoined to give it a place with the staples and staff of life, and catalogue it with beef and beans and bread."

The effect of burdens and restrictions upon the soliciting of orders by persons coming into the state for that purpose, for articles to be imported from another state, was up for consideration in *City of Fort Scott v. Pelton*, 39 Kan. 764, 18 Pac. 954, and it was determined that the imposition of a license tax upon a commercial drummer or other person of another state, for

offering to sell goods within the city by sample, where the goods are to be brought from another state and where the owner of the goods does not reside within the state, was a restriction upon interstate commerce, and that an ordinance creating such restriction was void. This case was based on *Robbins v. Shelby Taxing District*, 120 U. S. 494, 7 Sup. Ct. 592, 30 L. Ed. 694. There a license was imposed on drummers for offering for sale or selling goods by sample, and the statute provided for the prosecution and punishment of those who conducted such business without such license. A non-resident drummer for a house in another state was arrested, and the question arose as to whether the solicitation of business and the taking of orders constitutes an element of interstate commerce, and whether the tax imposed was an unconstitutional restriction upon the same. It was there held that such a restriction affects the very foundation of interstate trade; that in most cases it was the only practical way for merchants or manufacturers to obtain trade in other states, and "to say that such a tax is not a burden upon interstate commerce is to speak at least unadvisedly and without due attention to the truth of things."

In a number of later cases the federal supreme court has taken the view that the right to solicit or take orders for interstate business constitutes a part of interstate commerce and that a state is without power to place a restriction or burden on such business. (*Asher v. Texas*, 128 U. S. 129, 9 Sup. Ct. 1, 32 L. Ed. 368; *Stoutenburg v. Hennick*, 129 id. 141, 9 Sup. Ct. 256, 32 L. Ed. 637; *Lyng v. Michigan*, 135 id. 161, 10 Sup. Ct. 725, 34 L. Ed. 150; *McCall v. California*, 136 id. 104, 10 Sup. Ct. 881, 34 L. Ed. 392; *Vance v. W. A.*

*Vandercook Company* [No. 1], 170 id. 438, 18 Sup. Ct. 674, 42 L. Ed. 1100.)

The taking of orders for ordinary commodities to be sold and shipped here from another state being interstate commerce, the next question is whether intoxicating liquor is to be regarded as a legitimate article of interstate commerce.   The contention of the state is that liquors stand on a different footing from other commodities ; that in the exercise of its police power the state has prohibited the sale or negotiation of sale of liquor except by certain druggists for certain purposes, and that liquors, being placed under the ban of the law, are taken out of the sphere of commerce in Kansas, and that the commercial power does not operate upon them.   There are strong arguments in favor of the position of the state, as is well illustrated in the dissenting opinions upon the subject in the federal supreme court.   If the question remained open for our determination, the writer would hold (and perhaps the court) that there is no real conflict between the federal power to regulate commerce and the police power reserved to the states.   While commercial power is exclusive within its scope, it was never intended to curtail the police power of a state exercised in good faith for the protection of the health and morals of the people.   As was said in *Sherlock et al. v. Alling, Administrator*, 93 U. S. 99, 23 L. Ed. 819, "in conferring upon congress the regulation of commerce, it was never intended to cut the states off from legislating on all subjects relating to the health, life and safety of their citizens."   It is recognized that self-preservation belongs to every sovereignty as well as self-defense to every individual, and that in the exercise of that power it is competent for a state, if it finds the general use of intoxicating liquor detrimental to

the peace, health and morals of the people, to prohibit the sale of the same within its limits by residents or non-residents.

The difference between liquors and ordinary commodities was never more strongly stated than by the supreme court of the United States in *Mugler v. Kansas*, 123 U. S. 662, 8 Sup. Ct. 297, 31 L. Ed. 205, where they say :

"We cannot shut out of view the fact, within the knowledge of all, that the public health, the public morals and the public safety may be endangered by the general use of intoxicating drinks ; nor the fact, established by statistics accessible to every one, that the idleness, disorder, pauperism and crime existing in the country are, in some degree at least, traceable to this evil. If, therefore, a state deems the absolute prohibition of the manufacture and sale, within her limits, of intoxicating liquors, for other than medical, scientific and manufacturing purposes, to be necessary to the peace and security of society, the courts cannot, without usurping legislative functions, override the will of the people as thus expressed by their chosen representatives."

If, as is there decided, a state may enact such a law without infringing the constitutional limitations as to liberty and property, and may determine and declare that such liquors are destructive of the peace and good order of society, why are not such liquors taken out of the sphere of interstate commerce? Goods infected with disease and meats and provisions unfit for use, as well as other articles the use of which is attended with danger, may be excluded by a state without trenching on the commercial power, upon the theory that they are not legitimate subjects of commerce, and, as Mr. Justice Harlan said, in *Bowman v. Chicago &c. Railway Co.*, 125 U. S. 515, 8 Sup. Ct. 710, 31 L. Ed. 700 :

"If, consistently with the constitution of the United

States, a state can protect her sound cattle by prohibiting altogether the introduction within her limits of diseased cattle, she ought not to be deemed disloyal to that constitution when she seeks by similar legislation to protect her people and their homes against the introduction of articles which are in good faith, and not unreasonably, regarded by her citizens as 'laden with infection' more dangerous to the public than diseased cattle, or than rags containing germs of disease."

The power of the state to prohibit the manufacture and sale of liquors being acknowledged, it would seem to the writer that such liquors were taken out of the legitimate subjects of commerce within the state of Kansas, and that a restriction on the introduction of them did not trench on the commercial power of the federal government. A very different view, however, has been taken by the supreme court of the United States, which is a controlling authority on questions of this character. In the Bowman case, *supra*, the exclusive power to regulate commerce confided to congress is held to imply the right to determine what are the legitimate subjects of commerce, and that it is not competent for a state to determine what is an article of lawful commerce in the state, nor to exclude intoxicating liquors from the list of merchantable articles by its determination that they are deleterious to the morals and health of its people.

In *Leisy v. Hardin*, 135 U. S. 110, 10 Sup. Ct. 684, 34 L. Ed. 128, it was said:

"That ardent spirits, distilled liquors, ale and beer are subjects of exchange, barter, and traffic, like any other commodity in which a right of traffic exists, and are so recognized by the usages of the commercial world, the laws of congress, and the decision of courts, is not denied."

42—64 KAN.

And being articles of commerce, it was held that the importation of them could not be prohibited without the consent of congress. The same view was taken in *In re Rahrer*, 140 U. S. 545, 11 Sup. Ct. 865, 35 L. Ed. 572, where it was remarked :

"Unquestionably fermented, distilled or other intoxicating liquors or liquids are subjects of commercial intercourse, exchange, barter and traffic between nation and nation, and between state and state, like any other commodity in which a right of traffic exists, and are so recognized by the usages of the commercial world, the laws of congress, and the decisions of courts."

To the same effect are *Scott v. Donald*, 165 U. S. 58, 17 Sup. Ct. 265, 41 L. Ed. 632, and *Vance v. W. A. Vandercook Company* (No. 1), 170 U. S. 438, 18 Sup. Ct. 674, 42 L. Ed. 1100.

Congressional action has been taken as to the importation of intoxicating liquors, but not such as to affect the question at bar. Soon after it had been determined in *Leisy v. Hardin*, supra, that the right to import liquors into a state included the right to sell them in the original packages in which they were imported, congress enacted the Wilson bill, which provides that all intoxicating liquors "transported into any state or territory or remaining therein for use, consumption, sale, or storage therein, shall, upon arrival in such state or territory, be subject to the operation and effect of the laws of such state or territory enacted in the exercise of its police power," to the same extent as if they had been produced in the state. This provision, however, did not affect interstate traffic in liquors further than to divest imported liquors of the character of interstate shipments at an earlier period of time than would otherwise have been

the case.   The act was interpreted in *In re Rahrer,*
supra, and *Rhodes v. Iowa,* 170 U. S. 412, 18 Sup. Ct.
664, 42 L. Ed. 1088, in which it was held to have been
the intention of congress to allow state laws to oper-
ate on liquors shipped into one state from another so
as to prevent a sale in the original package in viola-
tion of the laws of the state ; but while they were in
transit and until their delivery to the consignee they
were to be regarded as an article of commerce and not
within the operation of the state law.   The effect of
the act was to allow the state laws to apply to im-
ported liquors after the shipment ended, and to de-
prive the consignee or other person from a sale of the
same in the original package after delivery.

The cases of *Scott v. Donald,* 165 U. S. 58, 17 Sup. Ct.
265, 41 L. Ed. 632, and *Vance v. W. A. Vandercook Com-
pany* (No. 1), supra, involving the dispensary act of
South Carolina, are closely in point, for the reason
that the act contains a section substantially similar to
the one under consideration, prohibiting and punish-
ing the taking or solicitation of orders for the purchase
or shipment of alcoholic liquors.   In the latter case, it
was substantially held that under the constitution of
the United States every resident is free to receive, for
his own use, liquor ordered by him from another state,
and the inhibitions of a state statute do not operate to
prevent liquors from another state from being shipped
into such state on an order of the resident for his own
use ; that the right of the resident to order and receive
such liquors is reciprocal to and coordinate with the
right of the non-resident to sell and ship ; and that
any law of a state which restricts the right of a resi-
dent to buy liquors from a non-resident or the right of
a non-resident to sell and ship the same into the state,
is void.   Accordingly, it was held that a state law

depriving a non-resident of the right to ship intoxicating liquors into the state, unless previous authority is obtained from state officers, was an unconstitutional regulation of interstate commerce ; and further, that a state regulation which compelled a resident of the state who desired to order liquors for his own use from without the state first to communicate his purpose to a state chemist was invalid.

In the case of *In re Bergen*, decided May 19, 1900, in the circuit court of the United States for the district of Kansas (115 Fed. 339), the identical question which we have here was determined. Judge Hook, in a carefully prepared opinion, held, under the authorities of the supreme court, that a restriction or limitation upon a traveling salesman, coming from one state into another and soliciting orders for the sale of a commodity, is a burden upon interstate commerce ; that intoxicating liquors are lawful subjects of commerce, and that the right to send liquors from one state into another and the act of sending the same is interstate commerce, and that a state law which denies such a right, or substantially interferes with or hampers the same, is in conflict with the constitution of the United States, and for that reason the section in question was held to be void.

In *Westheimer v. Weisman*, 60 Kan. 753, 57 Pac. 969, a reference was made to the provision in question, and language was used which treated the provision as a valid one. However, the question at issue here was not involved in that case and, as will be seen, the court expressly declined to enter upon a discussion of the constitutionality of the provision. Even if the question had not been reserved and the provision had been determined to be valid, we would feel impelled to follow the supreme court of the United States,

which is supreme authority on federal questions. While there is a great lack of unanimity in that court and of harmony in its decisions, the later cases uniformly hold that state provisions such as the one we are considering are illegal restrictions upon interstate commerce and in conflict with the constitution of the United States.

It follows that the judgment must be reversed, and the cause remanded to the district court with directions to discharge the defendant.

All the Justices concurring.