# SUPREME COURT,
## STATE OF KANSAS.

## JULY TERM, 1908.

*PRESENT:*

Hon. WILLIAM A. JOHNSTON, Chief Justice.
Hon. ROUSSEAU A. BURCH,
Hon. HENRY F. MASON,
Hon. CLARK A. SMITH,
Hon. SILAS W. PORTER, ⎬ Justices.
Hon. CHARLES B. GRAVES,
Hon. ALFRED W. BENSON,

The City of Kinsley v. J. N. Dyerly.

No. 16,013. (98 Pac. 228.)

SYLLABUS BY THE COURT.

1. Interstate Commerce—*Sale and Delivery of Goods by an Agent.* In a prosecution for the violation of a city ordinance imposing a license-tax upon persons soliciting orders for the sale of goods, where it is shown that the defendant is the agent of a merchant of another state and carries samples of goods and solicits orders, which he sends to his principal for approval, the mere fact that the principal, after accepting the order, ships the goods to the same agent, with authority to deliver them to the purchaser and collect the price, will not prevent the transaction from being interstate commerce.

2. ——— *Same.* The right of a merchant of another state to sell his goods in this state carries with it the right to deliver them, and to employ for that purpose any agency he may deem proper, provided that at no time before the delivery the goods become so mingled with the common mass of property here as to deprive the transaction of its interstate features.

3. ——— *Burden of Proof—License-tax.* In a case like that referred to in the first paragraph, if there be a doubt that

1—79 KAN.

the sale was completed by the acceptance of the order by the principal and his shipping the goods, the contrary can not be assumed in order to sustain a conviction. The prosecution must establish its case.

Appeal from Edwards district court; CHARLES E. LOBDELL, judge. Opinion filed November 7, 1908. Reversed.

### STATEMENT.

J. N. DYERLY was charged with the violation of an ordinance of the city of Kinsley by peddling goods in the city at retail and soliciting persons to buy goods without first having obtained a license therefor. He was convicted in the police court, and appealed to the district court, where there was a trial without a jury. The district court adjudged him guilty, and he was sentenced to pay a fine of $10 and stand committed until the fine and costs were paid. From this conviction he appeals. His defense is that he was engaged in interstate commerce. The validity of the ordinance is not involved.

The ordinance imposed a fee of $20 a day on "peddlers and soliciting agents selling goods at retail." The court made findings of fact as follow:

"(1)  That the defendant, J. N. Dyerly, had no license to peddle goods or merchandise in the city of Kinsley.

"(2)  That the defendant was in the city of Kinsley at the time stated, and did make the sale to Mrs. Erwin as testified by her.

"(3)  That the defendant was at that time and on that date engaged in the business of soliciting orders for rugs for future delivery, which orders were to be sent by him to Kansas City, and to the L. B. Price Mercantile Company, and the goods shipped to him at Kinsley and by him delivered to the parties who had ordered same, who were to make payment to him for the same upon delivery."

The court held as conclusions of law:

"(1)  That the single sale to Mrs. Erwin would not be sufficient to establish the guilt of the defendant of

the charge of peddling within the limits of the city of Kinsley without a license.

"(2)   That the method of transacting the business by defendant, as described by him, left the sale incomplete until the goods had been received by him in Kinsley and by him delivered, which method deprives the transaction of its interstate features and renders it liable to the ordinance of the city."

The method by which the business of the defendant was conducted is described by him in his testimony as follows:

"Ques. What business are you engaged in?   Ans. Soliciting for the L. B. Price Mercantile Company, Kansas City, Mo.

"Q. What was the nature of your soliciting business —the work you did?   A. We took orders and sent them in to the company, and when the company approved of it they sent the goods, and we delivered them.

"Q. You did n't carry any goods around with you for delivery?   A. No, sir.

"Q. You carried samples?   A. Yes, sir.

"Q. You worked for a house in Missouri?   A. Yes, sir.

"Q. Did you sell and deliver any rugs in this city? A. No, sir; I did not."

"Q. What were you doing—merely taking orders? A. Taking orders.

"Q. What was done with those orders when you took them?   A. Sent them to Kansas City, and when the goods came I came and delivered them."

*(Cross-examination.)*

"Q. Were you peddling rugs in town here?   A. No, sir.

"Q. Did n't have any rugs here at all?   A. I had rugs here for samples.

"Q. Were n't you around trying to sell rugs?   A. No, sir.

"Q. What were you doing with them?   A. Trying to take orders from them.

"Q. What did you do with those orders?   A. Sent them to Kansas City.

"Q. And those rugs would be shipped to you?   A. Yes, sir.

"Q. You delivered them?   A. Yes, sir.

"Q. And collected the money? A. Yes, sir.

"Q. That was your business here? A. Yes, sir.

"Q. For instance, if you had sold the rugs to Mrs. Erwin you would take the order and send it to Kansas City for approval, and when they came you would deliver them and collect the money? A. Yes, sir."

*F. Dumont Smith,* for appellee.

*J. M. Harris,* for appellant.

The opinion of the court was delivered by

PORTER, J.: On the authority of *City of Kansas v. Collins,* 34 Kan. 434, 8 Pac. 865, the court held that the single sale made by the defendant failed to establish the fact that he was a peddler, which was proper, but it also found the defendant guilty of selling goods at retail as a soliciting agent, contrary to the provisions of the ordinance. The court expressly held that the fact that the goods were shipped to the person who solicited the orders and that he delivered them and collected the purchase-price necessarily deprived the transactions of their interstate character. To this we can not agree. It is contended that the ruling in this respect follows what was decided in *City of Kansas v. Collins, supra.* That case presented the following facts: A firm of wholesale dealers in Kansas City, Mo., sent their traveling agent into this state, who visited various places of business in the City of Kansas with samples and solicited orders from merchants. The orders were taken by him to the dealer in Kansas City, Mo., and when approved by the dealer the latter packed the goods at his place of business and sent them to the purchasers in Kansas, where they were delivered and paid for. In the opinion Mr. Justice Valentine observed that the evidence showed that the goods were not delivered by the defendant and that the payments for the goods were not made to him. But the opinion nowhere holds that if such had been the case it would have necessarily de-

prived the transaction of its interstate character. The syllabus reads as follows:

"Where an agent, such as is usually denominated a 'drummer' or 'commercial traveler,' simply exhibits samples of goods kept for sale by his principal, and takes orders from purchasers for such goods, which goods are afterward to be delivered by the principal to' the purchasers, and payment for the goods is to be made by the purchasers to the principal on such delivery, such agent is neither a peddler nor a merchant."

(See, also, *The State v. Hickox,* 64 Kan. 650, 68 Pac. 35.)

To hold that the principal may not make delivery and collect payment by an agent duly authorized for that purpose is to deny the law of agency. In the case of *In re Spain,* 47 Fed. 208, 14 L. R. A. 97, the agent who sold the goods by sample afterward delivered them and made settlement by collection or by notes for the principal. In the opinion it was said: "The right to sell implies the obligation and right to deliver. It is as much interstate commerce to do the one as the other." (Page 210.) The right to sell includes the right to sell by an agent. (*Lyng v. Michigan,* 135 U. S. 161, 10 Sup. Ct. 725, 34 L. Ed. 150.) And it must be true that the right to deliver includes the right to deliver by an agent. Delivery by an express company, where the goods are shipped C. O. D., has been held to be interstate commerce. (*O'Neil v. Vermont,* 144 U. S. 323, 12 Sup. Ct. 693, 36 L. Ed. 450.) So, when the goods are shipped into the state with a draft attached to the bill of lading the transaction is interstate commerce. (17 A. & E. Encycl. of L. 65, 66, and cases cited.) In *The City of Huntington v. Mahan,* 142 Ind. 695, 42 N. E. 463, 51 Am. St. Rep. 200, delivery was made by another agent, and an ordinance attempting to impose a license-tax upon him was held invalid.

It is apparent that the case at bar was only partially tried. There is no finding, nor is there any evidence to support a finding, with respect to the method by which

the shipments and delivery of the goods were made. When orders were approved by the company at Kansas City, Mo., were such orders filled by the appropriation of specific articles for that purpose, which were sent to the defendant as the agent of the company for delivery? Where a purchaser was dissatisfied with the quality of the goods and refused to accept them, what became of them? Were they returned to the dealer, or were they left with, and did they become the property of, the defendant? Did the Missouri company require the defendant to pay for the goods before they were shipped or delivered to him? Were the circumstances under which the goods were shipped such that when received by the defendant they became mingled with the general mass of property in the state? The trial court held that the delivery of the goods by the agent constituted the sale, and that all these questions were answered by that fact.

The only evidence as to the methods under which the business was transacted is that of the defendant. He testified that he made sales by sample only; that he was the agent of the L. B. Price Mercantile Company, of Kansas City, Mo.; that he carried rugs, and solicited orders by sample; that he sent the orders for approval to his principal; that the principal sent him the goods to be delivered and to make collection for payment; all of which might be true and the transactions be interstate commerce. On the other hand other facts might exist, not appearing in the evidence nor in the findings, which would deprive the transactions of their interstate character. (*In re Pringle,* 67 Kan. 364, 72 Pac. 864; *Croy v. Obion County,* 104 Tenn. 525, 58 S. W. 235, 51 L. R. A. 254, 78 Am. St. Rep. 931; *State v. Montgomery,* 94 Me. 192, 47 Atl. 165, 80 Am. St. Rep. 386.)

In *Gill v. Kaufman,* 16 Kan. 571, and in *McCarty v. Gordon,* 16 Kan. 35, it was held that where the drummer or agent merely solicits and transmits the order the transaction or sale does not become complete until

the order is accepted by the principal. The place of the contract is where the proposal is accepted.

In *State v. Willingham*, 9 Wyo. 290, 62 Pac. 797, 52 L. R. A. 198, 87 Am. St. Rep. 948, the business was held to be interstate commerce, and the only difference in the facts of that case and this is that there the principal shipped the goods into the foreign state consigned to itself, but the agent who solicited the order delivered them and collected the price. It was said in the opinion:

"The delivery of the articles to the persons ordering did not constitute a sale by the agent making the delivery, but the manufacture, shipment, and delivery of the goods were simply steps taken by the Chicago company in the performance of its contract. The shipment of them by the company to itself at Cheyenne had no greater significance than if they had been sent by the company from one of its warehouses to another in the city of Chicago. They were still the subject of interstate commerce, and the arrest of the agent was not authorized by law." (Page 296.)

The supreme court of the United States in a recent case had its attention directed to practically the same question. (*Rearick v. Pennsylvania*, 203 U. S. 507, 27 Sup. Ct. 159, 51 L. Ed. 295.) The statement of facts from the opinion is as follows:

"An Ohio corporation employed an agent to solicit in Sunbury retail orders to the company for groceries. When the company had received a large number of such orders it filled them at its place of business in Columbus, Ohio, by putting up the objects of the several orders in distinct packages, and forwarding them to the defendant by rail, addressed to him 'For A. B.,' the customer, with the number of the order also on the package for further identification. The company ultimately kept the orders, but it kept no book-accounts with the customers, looking only to the defendant. The defendant alone had authority to receive the goods from the railroad, and when he received them he delivered them, as was his duty, to the customers, for cash paid to him. He then sent the money to the corporation. The customer had the right to refuse the goods if not equal to the sample shown to him when he gave the

order. In that or other cases of non-delivery the defendant returned the goods to Columbus. No shipments were made to the defendant except to fill such orders, and no deliveries were made by him except to the parties named on the packages." (Page 510.)

It was contended in the argument that the order was not accepted and did not bind the Ohio corporation until the delivery took place, which is practically the contention here. Commenting on this the court said in the opinion:

"The fair meaning of the agreed fact that the orders were given to agents employed to solicit them is that the company offered the goods and that the orders were acceptances of offers from the other side. If there were the slightest reason to doubt that the contracts were made with the company through its authorized agent at the moment when the orders were given, which we do not perceive that there is, certainly the contrary could not be assumed in order to sustain a conviction. It is for the prosecution to make out its case." (Page 511.)

It will be observed that some important facts in that case do not appear in this. There is no showing here how the goods were shipped to the defendant—that is, whether there was an appropriation by the dealer in Kansas City, Mo., of specific goods to be delivered to certain purchasers. We cite the case, however, because it holds that the agent who solicits the order may be made the agent to deliver and collect without destroying the interstate character of the transaction. It also recognizes the doctrine that the contract of sale was complete in that case at the moment when the orders were given (as in this case when the orders were accepted), and further holds that if there be a doubt with respect to this the contrary can not be assumed in order to sustain a conviction.

It is also urged that the case of *In re Pringle*, 67 Kan. 364, 72 Pac. 864, is to the contrary, and is decisive, but nothing there decided conflicts, in our opinion, with this. There the methods of the business carried on were shown in detail. True, the person who took the orders

delivered the goods and collected the money, but these were by no means the controlling facts upon which the case turned. There the goods were shipped in bulk, in one box, by express, C. O. D., to the person who claimed to be the agent. When the goods arrived he paid the charges and distributed the contents to his various cus-- tomers. Moreover, the orders which he sent to his alleged principal did not·"disclose the names of any of the purchasers of any of the goods, or the kind or quantity desired by any one of them, and, when shipped, none of the goods was marked or otherwise designated for any particular individual." (Page 365.) When he received the goods he treated them as his own, and allowed customers to select indiscriminately from the goods such as they desired to purchase. Under these facts the inevitable conclusion· was reached by the court that the goods lost their distinctive character "and were blended with the common property of the state as soon as he received his box" (p. 367), and that "the foreign merchant had no trade relations whatever with the ultimate purchasers" (p. 366). In distinguishing the case from *The State v. Hickox,* 64 Kan. 650, 68 Pac. 35, Mr. Justice Burch said:

"In that case the salesman actually represented a merchant of another state. The purchaser's order was sent to that merchant. That merchant reserved the right to accept or reject the orders sent in, and did pass on them. The identical order given by the purchaser was filled. When the goods were shipped they were shipped to the actual purchaser. At no time did the agent.deliver any of the goods. In this case the petitioner merely took orders for himself, for goods which he intended to purchase, and which he did afterward purchase, and which he paid for and received in this state. The orders of the final recipients of the goods were never transmitted beyond the state, or accepted or filled by any one beyond·the state, and the goods 'were not delivered to the carrier for transportation to them." (Page 367.)

It is true that in the Hickox case the goods were shipped to the actual purchaser, and the agent deliv-

ered none of them, but it is apparent that the case turned upon other facts than these. The salesman actually represented a merchant of another state, and solicited orders which he sent to his principal for approval. The principal had the right to accept or reject the orders, and actually passed upon them. The identical order given by the purchaser was filled. There is no intimation in the opinion that it might not have been filled by sending the goods to the same salesman as agent for the purpose of delivery.

In *McLaughlin v. The City of South Bend*, 126 Ind. 471, 26 N. E. 185, 10 L. R. A. 357, a similar ordinance was held invalid, as applied to an agent who solicited orders in Indiana for books to be delivered at a future time. The books were in the city of Chicago. He procured orders which he transmitted to the publishers in Chicago, where the order was filled by sending the books ordered to him, and he delivered them to the purchaser.

It has often been declared by the supreme court of the United States that an ordinance imposing a license fee upon agents representing citizens of another state who offer goods in this state for sale by sample is void because it assumes to establish a regulation affecting commerce between the states. (*McCall v. California*, 136 U. S. 104, 10 Sup. Ct. 881, 34 L. Ed. 392; *Stoutenburgh v. Hennick*, 129 U. S. 141, 9 Sup. Ct. 256, 32 L. Ed. 637; *Asher v. Texas*, 128 U. S. 129, 9 Sup. Ct. 1, 32 L. Ed. 368; *Robbins v. Shelby Taxing District*, 120 U. S. 489, 7 Sup. Ct. 592, 30 L. Ed. 694.) The conviction in this case is predicated squarely upon the fact that the goods were shipped to the defendant, that he made the delivery, and collected the price. We can not affirm the judgment without declaring the law to be that these facts deprive the transaction of its interstate features. No case decided by this court and none that we have been able to find goes to that extent. For these reasons the judgment is reversed, and the cause remanded for another trial.