JACOB L. CRIGLER *et al., as Partners, etc.,* v. C. V. SHEPLER.

No. 15,939.    (101 Pac. 619.)

SYLLABUS BY THE COURT.

1. INTOXICATING. LIQUORS—*Interstate Commerce.* Section 2479 of the General Statutes of 1901 is not repugnant to the provision of the federal constitution giving congress the power to regulate interstate commerce.

2. ——— *Taking Orders in this State to be Filled by Shipment from Another State.* The owner of intoxicating liquors in another state can not, by virtue of this provision of the federal constitution, come into this state or send his agent here and in defiance of the laws of this state carry on the business of soliciting orders or proposals for the purchase of such intoxicating liquors, to be shipped from such other state, without incurring the penalties of such laws.

3. CONTRACTS—*Illegal Consideration.* The courts will not enforce payments promised in consideration of services rendered in criminal transactions.

4. ——— *Impairment of Obligation.* The fact that under a former decision, in an action to which the plaintiff was not a party, this court held that the statute above cited was, in its application to the particular facts, repugnant to the federal constitution, and that the services were rendered after such decision was announced; does not affect the result.

5. STARE DECISIS—*Parties.* A person who is not a party or privy in an action can not have a vested right in an erroneous decision made therein.

Crigler v. Shepler.

Error from Barton district court; JERMAIN W. BRINCKERHOFF, judge. Opinion filed April 10, 1909. Reversed.

*James W. Clarke,* for plaintiffs in error.

*Frank L. Martin,* and *Walter F. Jones,* for defendant in error.

The opinion of the court was delivered by

BENSON, J.: The defendants, Crigler & Crigler, wholesale liquor dealers at Covington, Ky., employed the plaintiff, Shepler, as a traveling salesman to solicit in Kansas orders for whisky to be shipped from Kentucky to the persons so ordering it. He sued for commissions. The court found that the orders were taken in contravention of section 2479 of the General Statutes of 1901, but that this section was unconstitutional, and gave judgment for the plaintiff for the amount of such commissions.

The defendants contend that the statute is valid, and that the plaintiff, having been engaged in an unlawful act, should not be aided by the court in collecting pay therefor. The statute is:

"Any person who shall take or receive any order for intoxicating liquors from any person in this state, other than a person authorized to sell the same as in this act provided, or any person who shall directly or indirectly contract for the sale of intoxicating liquors with any person in this state, other than a person authorized to sell the same, shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be punished therefor as provided in this act for selling intoxicating liquors."

In *The State v. Hickox,* 64 Kan. 650, 68 Pac. 35, it was held that a state law which places substantial restrictions upon the taking of orders by a non-resident salesman for intoxicating liquors to be imported from another state, when such orders are subject to the approval of the non-resident vendor, is a burden upon

interstate commerce, and in so far as the act in question applied to such cases it was repugnant to the provision of the federal constitution giving congress the power to regulate interstate commerce. Recent decisions of the supreme court of the United States have, however, interpreted the Wilson act (26 U. S. Stat. at L., p. 313) so as to permit the effective operation of such state legislation. A statute of South Dakota imposed a license-tax upon the business of selling or offering for sale intoxicating liquors by traveling salesmen. In construing this statute it was said:

"It would be, we think, a disregard of the purposes of congress to hold that the owner of intoxicating liquors in one state can, by virtue of the commerce clause, go himself or send his agent into such other state, there in defiance of the law of the state to carry on the business of soliciting proposals for the purchase of intoxicating liquors." (*Delamater v. South Dakota,* 205 U. S. 93, 99, 27 Sup. Ct. 447, 51 L. Ed. 724.)

Our statute prohibits such business, and within the principles of this decision is not obnoxious to the federal constitution as finally determined by that tribunal, whose decisions upon that question, as stated in the Hickox case, we feel impelled to follow.

The plaintiff contends, however, that the opinion in that case was the law of this state when the services were rendered, and that they were not, therefore, performed in violation of law. As stated in his brief his claim is:

"The contract having been entered into pursuant to the adjudication of this court in *The State v. Hickox,* the law can not be given a retrospective operation and thus impair the obligations of the contract."

Decisions of the supreme court of the United States are cited in support of this proposition. Mr. Chief Justice Taney stated the doctrine thus:

"And the sound and true rule is that if the contract when made was valid by the laws of the state, as then expounded by all the departments of its government,

and administered in its courts of justice, its validity
and obligation can not be impaired by any subsequent
act of the legislature of the state, or decision of its
courts, altering the construction of the law." (*Ohio
Life Insurance and Trust Company v. Debolt*, 57 U. S.
416, 432, 14 L. Ed. 997.)

It was expressly stated in the opinion, however, that
the majority of the court did not agree upon the prin-
ciples upon which the judgment should be maintained,
and that the views thus expressed were those of the
chief justice and Mr. Justice Grier.    Nevertheless,
this declaration was referred to and adopted in sev-
eral cases following in that court and in some of the
state courts, and in some instances by text-writers.
In *Douglass v. County of Pike*, 101 U. S. 677, 25 L. Ed.
968, after citing the foregoing case, it was said:

"After a statute has been settled by judicial con-
struction, the construction becomes, so far as con-
tract rights acquired under it are concerned, as much
a part of the statute as the text itself, and a change of
decision is to all intents and purposes the same in its
effect on contracts as an amendment of the law by
means of a legislative enactment." (Page 687.)

This doctrine was approved and followed in other
opinions of the same court.    Also in *Haskett et al. v.
Maxey et al.*, 134 Ind. 182, 33 N. E. 358, 19 L. R. A.
379, in *Center School Township v. State, ex rel. Board,
etc.*, 150 Ind. 168, 49 N. E. 961, and in *Farrior v. New
England Mortgage Security Co.*, 92 Ala. 176, 9 South.
532, 12 L. R. A. 856.    In volume 2 of the second edition
of Lewis's Sutherland on Statutory Construction, sec-
tion 485, the opinion of Mr. Chief Justice Taney in the
Debolt case and other opinions of that court based upon
it are given as authority for the following statement
in the text:

"A judicial construction of a statute becomes a part
of it, and as to rights which accrue afterward it should
be adhered to for the protection of those rights.    To
devest them by a change of the construction is to legis-
late retroactively."

The subject is referred to and the opinion in *Douglass v. County of Pike, supra,* is quoted from in Endlich on the Interpretation of Statutes, section 1, note 1, but the views of the author are not expressed.

The first judicial remonstrance against the broad declaration of the chief justice in the court in which it was announced was in the dissent of Mr. Justice Miller in *Gelpcke v. City of Dubuque,* 68 U. S. 175, 17 L. Ed. 520, wherein he said:

"But he [Mr. Chief Justice Taney] clearly shows that there was in his mind nothing beyond the case of a writ of error to the supreme court of a state, for he says in the midst of the sentence cited, or in the immediate context, 'the writ of error to a state court would be no protection to a contract if we were bound to follow the judgment which the state court had given, and which the court brings up here for revision.' Besides, in the opinion thus cited, the chief justice says, in the commencement of it, that he only speaks for himself and Justice Grier. The remarks cited, then, were not the opinion of the court, were outside the record, and were evidently intended to be confined to the case of a writ of error to the court of a state, where it was insisted that the judgment sought to be revised should conclude this court." (Page 216.)

In several later cases that court has limited the application of the doctrine, and has held that the provision of the federal constitution forbidding the enactment of laws impairing the obligation of contracts does not apply to judicial decisions overruling former adjudications upon the faith of which contracts have been entered into. The following excerpt will show how the subject is now regarded by that court:

"In order to come within the provision of the constitution of the United States which declares that no state shall pass any law impairing the obligation of contracts, not only must the obligation of a contract have been impaired, but it must have been impaired by some act of the legislative power of the state, and not by a decision of its judicial department only." (*Central Land Company v. Laidley,* 159 U. S. 103, 109, 16 Sup. Ct. 80, 82, 40 L. Ed. 91.)

In that and, cases following (*Bacon v. Texas,* 163 U. S. 207, 16 Sup. Ct. 1023, 41 L. Ed. 132; *National Mutual B. & L. Assn. v. Brahan,* 193 U. S. 635, 24 Sup. Ct. 532, 48 L. Ed. 823) the proposition that the decision of a state court overruling its former adjudications can be held to impair contracts within the meaning of the constitutional provision is denied.   The real ground, as we believe, upon which that court has refused in some cases to follow the latest deliverance of a state court was stated by Mr. Justice Swayne, in the opinion of the court in *Gelpcke v. City of Dubuque,* 68 U. S. 175, 17 L. Ed. 520.  It appeared that the supreme court of Iowa had by several decisions held that a statute of that state authorized the issuance of bonds in aid of certain railroads.   Afterward the same court decided that the statute did not give that authority. After referring to these conflicting opinions the court said:

"It can not be expected that this court will follow every such oscillation, from whatever cause arising, that may possibly occur.   The earlier decisions, we think, are sustained by reason and authority."   (68 U. S. 205.)

It appears that the federal supreme court, in case of a conflict in state decisions construing a statute, will not be bound to follow the latest opinion—not because of the supposed impairment of contracts—but will adopt, in cases affecting the rights of the holders of commercial paper at least, the rule best sustained by reason and authority, and in the language of a recent opinion "they [the federal courts] have also at times applied a sort of equitable doctrine, and held to a rule which sustains a contract legal when entered into according to the then existing decisions of the state court, but which afterward, on further reflection, were held illegal by the state court." (*Swanson v. City of Ottumwa,* 131 Iowa, 540, 549, 106 N. W. 9, 12, 5 L. R. A., n. s., 860.)

This question has been carefully considered in sev-

eral state courts, and claims such as that made by the plaintiff here have been rejected after a careful review of the federal authorities upon which they were supposed to rest. It was originally held in California that a conveyance of land absolute in form, but intended as a mortgage, did not pass the legal title. Afterward it, was decided that the legal title did pass by such conveyance. It was contended in the last case that a deed executed after the first decision could only have effect in accordance with the rule first declared. The court stated:

"The courts can not make or repeal a law. 'They can say what a law means; and if afterward they see that they have made a mistake, they can correct their error by an overruling of a former decision, the consequence of which overruling is that the blunder is thenceforward deemed never to have been law.' (Bishop, Const., § 569.)

"It has been held here that, although it appears the parties have entered into a contract relying upon a previous decision of the supreme court, they would not be relieved from the obligations thereof because of a subsequent decision by the same court overruling the former one and declaring a different rule upon the same subject. (*Kenyon v. Welty*, 20 Cal. 637, 81 Am. Dec. 137.) There are some cases in which the supreme court of the United States has held that the construction given to a statute by the highest tribunal in the state, whether sound or not, must be taken as correct, so far as contracts made under the act are concerned, and no subsequent decision altering the construction can impair their validity. The construction becomes a part of the statute—as much so as if it were an amendment made by the legislature. . . . These cases, however, all involved the question as to the validity of negotiable securities." (*Allen v. Allen*, 95 Cal. 184, 199, 30 Pac. 213, 216, 16 L. R. A. 646.)

This rule was followed in *Alferitz v. Borgwardt*, 126 Cal. 201, 58 Pac. 460. In *Swanson v. City of Ottumwa, supra,* where a statute was construed differently than it had been interpreted in prior decisions, it was said:

"Again, it is argued that, prior to the decision in the

Heins and Witter cases, which were decided after the bonds in this case were issued and delivered, this court was committed to the doctrine that a city might issue negotiable bonds in such cases as this, and that to now hold to the contrary would be in violation of the constitutional provision with reference to the impairment of the obligations of contracts. Many cases are cited in support of this contention, although none of them, as it seems to us, go so far as to hold that the constitutional limitation applies to a judicial decision, unless that decision be the construction of a particular statute, under which the bonds or contracts in each case were executed." (Page 548.)

In a note to the report of this case in 5 L. R. A., n. s., 860, it is suggested that the principle decided covered also a change in the construction of a statute, which in the opinion is referred to as a possible exception to the rule stated. We concur with the annotator in this view.

This question was very carefully considered in Texas in a clear and forceful opinion affecting the constitutional provisions relating to homesteads. Concerning the contention that a former decision precluded the assertion of the claim to exemption the court said:

"Under the proposition contended for by the appellant, this court is called upon to hold that a decision of the supreme court of a state, although erroneously made, could give validity to a statute which the legislature had no power to enact, and thereby deprive the citizens of Texas of their constitutional right of exemption of their homesteads from this class of charges. . . . If the supreme court had the right to say that those people upon whose property burdens had been placed, as in this case, under the decision referred to, must bear that burden and be deprived of the constitutional protection, then this court had as much authority to say that the people in all future time should suffer the same deprivation of their constitutional rights.

"Such a decision as that sought would be violative of the fundamental principles of our jurisprudence and an assumption of power forbidden to be exercised by the court, and would involve the administration of justice in many and insurmountable difficulties.

. . . When courts speak of the obligation of contracts they mean the legal obligation or binding force of such contracts; and, if the law upon which the validity of the contract depends be unconstitutional, it is not a law and never was a law, and the pretended contract is void and has no legal obligation to be violated." (*Storrie v. Cortes,* 90 Tex. 283, 290, 292, 35 L. R. A. 666, 38 S. W. 154.)

The same conclusion is briefly stated in *Sedalia to use v. Donohue,* 190 Mo. 407, 89 S. W. 386.

In considering this subject the rule of *stare decisis* has sometimes been confounded with the constitutional provision inhibiting laws impairing the obligation of contracts. Under this rule courts will not overrule decisions which have settled property rights where greater mischief would be caused by departing from the decisions than by following them, but will leave the correction of a possibly erroneous interpretation to the legislature. This, however, is only a rule of policy, and has no application here. The legislature has already enacted this law, and the court is under no legal or moral obligation to perpetuate an erroneous construction placed upon it through an imperfect understanding of the views of the federal supreme court. Courts do not and can not change the law by overruling or modifying former opinions. They only declare it by correcting an imperfect or erroneous view. The law itself remains the same, although interpretations may have differed. (*Alferitz v. Borgwardt,* 126 Cal. 201, 58 Pac. 460; *Ray v. Natural Gas Co.,* 138 Pa. St. 576, 21 Am. St. Rep. 922, 12 L. R. A. 290, 20 Atl. 1065; *Pierce et al. v. Pierce,* 46 Ind. 86; *Taliaferro v. Barnett,* 47 Ark. 359, 1 S. W. 702.) An erroneous ruling may in some circumstances become the law of the particular case, but this will not prevent the court in another action from holding to the contrary. A person who is not a party or privy in the action can not acquire a vested right in an erroneous decision made therein.

The conclusion that the statute under consideration in *The State v. Hickox,* 64 Kan. 650, 68 Pac. 35, was inoperative so far as it applied to the controversy then presented was declared after a careful examination of the decisions of the supreme court of the United States affecting the question. Since that opinion was written, by progressive adjudications of the federal tribunal, the commerce clause of the federal constitution and the Wilson act have been so construed as to permit the effectual operation of that statute to punish the acts therein prohibited. Measured by these later opinions this statute is valid, and we now conform our decisions to these controlling interpretations. (*The State v. Lemp, ante,* p. 705.)

The supreme court of Iowa in a recent opinion followed the Delamater case (205 U. S. 93), and overruled previous decisions wherein it had held that a similar statute of that state was in conflict with the federal constitution. The court said:

"But . . . when we have held a state statute to be unconstitutional because in supposed conflict with the constitution of the United States, and the supreme court of the United States has so interpreted the federal constitution that the supposed conflict is found not to exist, there is no good reason why we should not change our rulings so as to sustain the policy of the statute of the state." (*McCollum v. McConaughy* [Iowa, Feb. 1909], 119 N. W. 539.)

We conclude that section 2479 of the General Statutes of 1901 is valid; that a promise to pay for services in criminal transactions will not be enforced; that the former decision between other parties holding the statute invalid does not give the plaintiff a right to recover; and that he must fail in the action.

The judgment is reversed and the cause remanded, with directions to enter judgment for the defendants on the findings.