The State v. Lemp.

THE STATE OF KANSAS, *ex rel. Fred S. Jackson, as Attorney-general,* V. WILLIAM J. LEMP BREWING COMPANY.

No. 15,544.   (101 Pac. 504.)

SYLLABUS BY THE COURT.

1. FOREIGN CORPORATIONS—*Ouster—Evidence.* The evidence in this case is reviewed and found to be sufficient to support the findings of fact; and it is held that the findings and evidence support the conclusion that judgment of ouster should be entered.

2. ———— *Doing Business in this State.* A Missouri corporation whose traveling salesmen solicit and receive orders in this state for intoxicating liquors, which orders, when accepted by the corporation, are filled by shipping the liquors "f. o. b." the cars at St. Louis to the purchasers, is engaged in business in Kansas and subject to the provisions of the statutes relating to foreign corporations doing business in this state.

3. ———— *Interstate Commerce — Soliciting Orders for Intoxicating Liquors.* Within the recent decisions of the supreme court of the United States the provisions of our statute relating to the taking of orders for intoxicating liquors are not repugnant to the commerce clause of the federal constitution.

Original proceeding in *quo warranto.* Opinion filed April 10, 1909. Judgment of ouster. Opinion denying a petition for a rehearing filed June 5, 1909.

STATEMENT.

THIS is an action in *quo warranto* to oust the defendant from exercising corporate franchises in this state. It is alleged in the petition that the defendant is engaged in business in this state without any permission from the charter board, and that without any authority therefor it is engaged in the unlawful sale of intoxicating liquors and in maintaining places where such liquors are sold and delivered, and in assisting others in keeping such places, in violation of the laws of this state.

The defendant is a Missouri corporation, organized

45—79 KAN.

to brew and sell beer and to manufacture and sell ice. The petition was filed and summons was issued May 10, 1907, and an alias summons was served June 13, 1907. Similar actions were commenced about the same time against other foreign brewing companies, and receivers were appointed in the several cases. (*The State v. Brewing Association,* 76 Kan. 184.)

The commissioner appointed for that purpose heard the testimony and made findings of fact, which, in substance, are that on the 22d day of April, 1907, and for many years prior thereto, the defendant was the owner and in possession of three tracts of land in Crawford county, two lots in the city of Everest, three lots in the city of Wichita, and several lots in the city of Leavenworth, as described; that on the 20th day of April, 1907, at a meeting of the directors of the brewing company, the secretary stated:

"That the conditions in the state of Kansas were threatening, and that according to the present indications the state will not allow any one to wholesale or retail beer. The secretary informed the board furthermore that certain ouster and injunction proceedings had been brought against certain breweries doing business in the state of Kansas. He called the attention of the board to the fact furthermore that this company is not actually selling its beer within the state of Kansas, for the reason that its product is sold exclusively to wholesalers and that shipments made by the William J. Lemp Brewing Company in the state of Kansas come within the provisions of the interstate commerce law, while, on the other hand, the secretary has reasons to believe that the breweries against whom the actions have been brought are conducting a business in Kansas of their own account, through branches or salaried agencies; and inasmuch as the action of the state may involve the question of destruction and confiscation of property, personal and real, owned by breweries, he thought it best for the Lemp brewing company to take immediate steps for the purpose of selling or disposing of the property owned by it in the state of Kansas, in order to guard against the trouble and complications."

Thereupon the proposition of Edwin A. Lemp, who was then a director, assistant secretary and treasurer of the corporation, to purchase its real estate in Kansas, was accepted, and on the 22d day of April a conveyance was made accordingly, for the purpose, as found by the commissioner, of evading responsibility for previous infractions of the law.

John Baum, of the city of Leavenworth, was for more than twenty years prior to the filing of this action a dealer in the beer manufactured by the defendant company, at Leavenworth, Kan., and had charge of all of the defendant's property in that city. He rented the properties, looked after the collection of rent thereon and repairs thereof, paid the taxes, and furnished the tenants with bar fixtures, with the understanding that such tenants should purchase of him defendant's beer and retail the same to the trade.

S. W. Knecht had charge of defendant's property in Crawford county, Kansas, and with the permission of the defendant company placed buildings thereon, furnished the same with bar fixtures supplied by defendant company, with the understanding that defendant's beer should be sold thereon. He listed $2835 worth of defendant's property for taxation in Crawford county for the year 1907, as the agent of defendant company, and had charge of defendant's property in Crawford county for some years prior to the commencement of this action, paid the taxes thereon for the company, and remitted rents therefor to it. Among the property listed for taxation by S. W. Knecht, as agent of the defendant company, were four sets of bar fixtures, which were being used to violate the laws of the state of Kansas at the time the same were so listed and until the same were seized by the receivers.

During the month of June, 1907, the receivers took possession of all of the property described in the findings, except the real estate in Crawford county, and found therein several sets of bar fixtures belonging to defendant company.

A wholesale malt liquor dealer's license stamp was issued to the defendant by the internal revenue collector for this district, for No. 1218 South Walnut street, Coffeyville, and was posted by its agent in the building on that lot, which was used by the defendant's agent as a distributing depot for its beer until March 1, 1907, when the stamp was removed and the building was abandoned. The rent for the building and the amount of the license-tax was paid by the company from its Kansas City office. The defendant paid an employee to unload this beer from the cars in Coffeyville and to haul it to this distributing depot. The commissioner also found:

"That at the time this suit was commenced, and for several years prior thereto, defendant company had been doing business in the state of Kansas contrary to law and had been aiding and assisting in the violation of the laws of the state by furnishing bar fixtures and renting its buildings and other property in the state for the purpose of encouraging the sale of its beer in said state."

The commissioner concluded, as matter of law, that the company should be ousted from doing business in this state.

*Fred S. Jackson,* attorney-general, and *Charles D. Shukers,* special assistant attorney-general, for The State.

*F. B. Dawes, C. P. Rutherford,* and *R. C. Miller,* for defendant.

The opinion of the court was delivered by

BENSON, J.: The defendant excepted to the finding that the conveyance to Edwin A. Lemp was made to evade responsibility for violations of law. The recital of the proceedings of the corporate meeting at which the transfer was ordered and the course of business of the defendant in the state appear to warrant the inference. The property was used after the conveyance

precisely as it had been used before—for the sale of the beer received from the defendant; and the defendant's bar fixtures were used in the various places just as they were used before—to promote the sale of the beer so furnished by the defendant. Mr. Baum continued to collect the rents and look after the property in Leavenworth, but accounted therefor to Mr. Lemp instead of the Lemp brewing company. In view of these facts the particular motive for the transfer is not very important.

The defendant also excepted to the finding concerning the use made of the property in Crawford county, and the returns for taxation made by Mr. Knecht, the agent in charge. The evidence shows that these tracts, situated in the mining districts, were purchased upon the advice of Mr. Knecht, a wholesale liquor dealer at Minden, Mo., who was handling the Lemp beer. Mr. Knecht arranged with the defendant to put up small buildings on these tracts for use in making sales of beer bought by him from the defendant. He ordered and paid for the beer, and it was shipped to him at Minden "f. o. b." the cars at St. Louis. He delivered it by wagons to the various places occupied by his tenants on the defendant's lands in Crawford county, and took back the empty kegs and cases. The defendant furnished bar fixtures for these places, which were shipped to Mr. Knecht at Minden, and by him placed in the premises, where they remained in the various buildings for the use of the different tenants until taken by the receivers. The finding that these bar fixtures were listed for taxation for the year 1907 by S. W. Knecht, as agent for the defendant, is supported by certified copies of the returns. When asked if he made such return Mr. Knecht said: "I can't say that I have." When asked if he could say that he had not, he answered: "No, I can't do that either." The finding is therefore supported by the evidence. In any event the property belonged to the defendant and was subject to taxation;

it was the duty of the defendant to have it listed for that purpose. Besides, the taxes upon this and other property of the defendant so listed by Mr. Knecht were paid by him and credit was given to him for the amount by the defendant.

The only importance of this matter of assessment and taxation is the evidence it affords that the defendant had this property in the state, and the bearing that the latter fact may have upon the question whether it was engaged in business here in violation of law, as found by the commissioner. This finding is challenged, and is the principal subject of contention. The defendant argues that it was not doing any business in this state, hence that "it was not in Kansas," and therefore can not be ousted therefrom. The real estate, whether owned by the corporation or its secretary, was being used in violation of law to promote the sale of the beer manufactured by the defendant. The bar fixtures necessary for the unlawful use and to promote the sale of its product were supplied by the defendant. The greater the quantity of beer sold by these means the greater would be the sales by the defendant. Thus the defendant by furnishing the fixtures, to say nothing of the real estate, was aiding and abetting in the violation of the laws of this state, and to that extent at least was doing business here. The rents for the defendant's warehouse at Coffeyville, the internal revenue tax upon its business there and the charges of the drayman for delivering beer were paid through its Kansas City branch. These payments were entered upon its books, which were regularly checked up by its traveling auditor. The manager of that office testified that he knew that the company had a warehouse at Coffeyville, which city was within the territory of the Kansas City branch. In the light of this evidence the claim of the defendant that it was ignorant of these transactions at Coffeyville is not sustained. A traveling salesman of the defendant took orders for beer at Coffeyville, and when a

sufficient number of orders had been taken to make up a car-load the beer was shipped to that city, consigned to the various purchasers, but received by a drayman employed by this salesman and paid by the defendant's agents, who stored it in the warehouse where the revenue stamp was posted, and from which place it was taken by the various purchasers or delivered to them by the drayman. Some of it was taken from the cars by purchasers before being stored in the warehouse. The salesman testified:

"Ques. Who looked after this beer that was shipped to Coffeyville in car-load lots after its arrival there? Ans. This drayman, Mr. Bouilly.

"Q. How would he know that there was a car of Lemp beer at Coffeyville to be unloaded? A. We would write him to that effect, and, besides, the customers would tell him to look out for a car; that there was one coming. Furthermore, I would see him every time I would go down there, and he would know what orders I would take and would be on the lookout for the car.

"Q. Then he would look out for the car and when it came he would unload the beer? A. He would unload the beer, distribute it to these different parties who had ordered, and what they could n't take at the time would be put in this warehouse.

"Q. And then when they needed more beer he would take it out of the warehouse and distribute it to them, would he? A. They would go to the bank and lift their drafts or orders attached to the drafts for the goods there belonging to them. I would sometimes give him a copy of the orders I had taken for these different parties and he would know what each one was to get out of the car and could keep track of it in that way."

"Q. Who paid Mr. Bouilly for looking after the warehouse and unloading the cars of beer and storing it; distributing and storing it? A. Why, we would pay him so much a car for handling the goods and delivering to these different parties, which was added to the amount which we would charge the customer."

The fact that the revenue stamp was sent to Kansas City and this warehouse closed in March, 1907, ought not to preclude a fair consideration of the course of

business before that date as evincing the purposes and intent of the company and its attitude with reference to the laws of this state.

The evidence also shows that the defendant had agents in this state soliciting and taking orders for beer subject to the approval of the company, which shipped the beer "f. o. b." the cars at St. Louis. Under the construction of the Wilson act (26 U. S. Stat. at L. p. 313) by the supreme court of the United States, this manner of dealing in intoxicating liquors is doing business in this state. (*Delamater v. South Dakota,* 205 U. S. 93, 27 Sup. Ct. 447, 51 L. Ed. 724; *Phillips v. Mobile,* 208 U. S. 472, 28 Sup. Ct. 370, 52 L. Ed. 578.) In the Delamater case it was held that where the salesman of a liquor firm doing business at St. Paul, Minn., was engaged in the business of soliciting orders from residents of South Dakota, which were accepted and the liquor shipped accordingly from St. Paul to the purchasers in South Dakota, this was a violation of the laws of the latter state imposing a license charge upon "the business of selling or offering for sale" intoxicating liquors within the state, and that this statute of South Dakota was not repugnant to the commerce clause of the constitution of the United States. The court said:

"Of course if the owner of the liquor in another state had a right to ship the same into South Dakota as an article of interstate commerce, and, as such, there sell the same in the original packages, irrespective of the laws of South Dakota, it would follow that the right to carry on the business of soliciting in South Dakota was an incident to the right to ship and sell, which could not be burdened without directly affecting interstate commerce. But as by the Wilson act the power of South Dakota attached to intoxicating liquors, when shipped into that state from another state after delivery but before the sale in the original package, so as to authorize South Dakota to regulate or forbid such sale, it follows that the regulation by South Dakota of the business carried on within its borders of soliciting proposals to purchase intoxicating liquors, even though

such liquors were situated in other states, can not be held to be repugnant to the commerce clause of the constitution, because directly or indirectly burdening the right to sell in South Dakota, a right which by virtue of the Wilson act did not exist.  .  .  .   It having been thus settled that under the Wilson act a resident of one state had the right to contract for liquors in another state and receive the liquors in the state of his residence for his own use, therefore it is insisted the agent or traveling salesman of a non-resident dealer in intoxicating liquors had the right to go into South Dakota and there carry on the business of soliciting from residents of that state orders for liquor to be consummated by acceptance of the proposals by the non-resident dealer.   The premise is sound, but the error lies in the deduction, since it ignores the broad distinction between the want of power of a state to prevent a resident from ordering from another state liquor for his own use and the plenary authority of a state to forbid the carrying on within its borders of the business of soliciting orders for intoxicating liquors situated in another state, even although such orders may only contemplate a contract to result from final acceptance in the state where the liquor is situated.   The distinction between the two is not only obvious, but has been foreclosed by a previous decision of this court." (Pages 100, 102.)

In the opinion in *Crigler v. Shepler,* (*post,*) the effect of the foregoing decision upon the rule announced in *The State v. Hickox,* 64 Kan. 650, 68 Pac. 35, is stated.   The construction placed upon the commerce clause of the federal constitution and upon the Wilson act by the supreme court of the United States must prevail.

Our conclusion is that the findings and the evidence warrant the conclusion that the defendant was at the commencement of this action engaged in business in this state in violation of its laws.   A judgment of ouster will therefore be entered as prayed for.

OPINION DENYING A PETITION FOR A REHEARING.

The opinion of the court was delivered by.

BENSON, J.: In a petition for a rehearing the defendant complains that the judgment seems to have been rendered on the ground that the defendant had aided and abetted violations of the prohibitory liquor law, rather than because it was doing business in this state without complying with the requirements of the statute concerning foreign corporations.

The evidence warranted the finding that the defendant not only aided but was, through its agents and employees, doing business in violation of the prohibitory law. Proof that it was engaged in business here necessarily revealed the nature of that business, and the fact that this involved infractions of one statute can not exempt the corporation from its duty to comply with the conditions prescribed in other statutes.

The defendant also complains that the federal decisions cited in the opinion are not applicable. The answer pleaded that the business transactions of the defendant were in accordance with, and under the protection of, the federal constitution. This must have been intended as a reference to business done through its soliciting agents; and the authorities cited are pertinent to the issue thus presented, although the findings, supported by the evidence, relating to its other business in this state justify the judgment. After careful consideration the petition for rehearing is denied.

A motion was filed by Edwin A. Lemp, the transferee of the real estate, for its release, which motion, it appears, was submitted with the principal issue, but was inadvertently overlooked. This real estate was conveyed by the company to Mr. Lemp, who was a director, assistant secretary and treasurer of the corporation, "to evade responsibility for previous infractions of the law," as found by the commissioner, and to avoid "trouble and complications," as stated in the record of

the corporate meeting, quoted in the statement. Considering the inferences fairly to be drawn from its previous conduct, present methods, the time and reason of the transfer, the relation of the grantee to the corporation, the management and use of the property after the transfer, and all the attendant circumstances, this motion must be denied.

The property in the hands of the receivers will be disposed of as provided in *The State v. Brewing Association*, 76 Kan. 184, 90 Pac. 777. Bar fixtures and other personal property used in the unlawful sale of intoxicating liquors, or in places where such liquors are sold or drunk contrary to law, shall, as soon as practicable, be removed from the state. Personal property whose ordinary use is lawful may be sold or removed from the state at the defendant's option, expressed to the receivers. The receivers may permit removals and sales of personal property to be made by the defendant, but only under their supervision and when satisfied of the good faith of the transaction.

All real estate belonging to the defendant shall be sold. A reasonable time is allowed in which to make sales, and upon application to the court accompanied by proof of an actual sale in good faith any parcel of real estate will be discharged from the custody of the receivers. If after reasonable opportunity to dispose of it without undue sacrifice any real estate remains unsold, the receivers shall sell it as upon execution and pay the proceeds, after deducting expenses, to the defendant.

The receivers shall reserve and sell as upon execution sufficient property to pay costs and accruing costs, unless the same are voluntarily paid by the defendant.