### HARRIET B. DEWEES

*v.*

### J. H. OSBORNE, Receiver.

*Opinion filed February 17, 1899.*   ·

1. PRINCIPAL AND AGENT—*wife clothing husband with authority as agent is bound by his acts.* Assignments of life insurance policies by the beneficiary to a bank, to secure her husband's indebtedness, are not released by the bank's renewal of notes without her consent, where her husband, acting as her agent, obtained her general assignment of the policies to the bank, which he delivered to the latter as collateral security for existing or future indebtedness.

2. ESTOPPEL—*when assignor of insurance policy is estopped to claim release of assignment.* A wife having knowingly permitted a bank to pay heavy premiums on life insurance policies until maturity,—a period of over six years,—under her assignment thereof to secure her husband's debts, is estopped to claim the assignments had been released by the bank's renewal of her husband's short-time notes.

3. APPEALS AND ERRORS—*competency of witness cannot be first questioned on appeal.* An objection as to the competency of a witness cannot be considered when first raised on appeal.

*Osborne* v. *Dewees,* 78 Ill. App. 314, affirmed.   .

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Morgan county; the Hon. ROBERT B. SHIRLEY, Judge, presiding.

M. T. LAYMAN, and PATTON, HAMILTON & PATTON, for appellant.

JOHN A. BELLATTI, CHARLES A. BARNES, and RICHARD YATES, for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The Equitable Life Assurance Society of the United States filed its bill in the circuit court of Morgan county against the appellee, Jacob H. Osborne, receiver of the Central Illinois Banking and Savings Association of Jacksonville, a co-partnership for conducting a bank, and the appellant, Harriet B. Dewees, together with John I. Chambers and William E. Veitch, former receivers of said bank, alleging that complainant was justly indebted in the amount of two policies of insurance upon the life of Samuel S. Dewees, deceased, for $5000 each, and aggregating $10,000, originally payable by the terms of the policies to the appellant, Harriet B. Dewees, then wife of Samuel S. Dewees, and assigned by her to said William E. Veitch, cashier of said bank, and by subsequent assignments transferred to appellee as such receiver, and that appellant and appellee each claimed the money so due, and complainant asked that said parties be required to interplead and state their respective claims to the money, and that the court would adjudge to whom the same belonged. A like bill was filed by the Provident Savings Life Assurance Society of New York against the same parties and stating the same facts, except that there was a single policy in that case for $10,000. The court ordered the parties to interplead, and the money was deposited in the court by complainants, subject to final decree. Chambers and Veitch disclaimed any interest, and appellant and appellee answered. The bill first mentioned was consolidated with the latter one. Appellant, by her answer as finally amended, admitted the assignment of the policies by her, but claimed that they were assigned as security for certain notes of Samuel S. Dewees then held by the bank, and alleged that the bank repeatedly extended the time of payment of such indebtedness by taking renewal notes therefor without her knowledge or consent, whereby the policies were released as security.

Appellee· answered, claiming the insurance policies as security for the indebtedness of Samuel S. Dewees to the bank, and alleging that after the assignment the bank had paid all premiums on the policies and that the receivers had kept up the payment of such premiums, and there had been paid in all $3527.05. The cause having been referred to a master, he reported that the policies were assigned to the bank as collateral security for any indebtedness of Samuel S. Dewees to the bank existing at the time of the assignment or that might thereafter exist; that appellant was not notified of the renewals and did not consent thereto, but that the policies were not released by the taking of renewal notes in accordance with the contract, and that the moneys due on the policies were to be paid to the appellee to apply on the indebtedness of Samuel S. Dewees. Objections were overruled by the master and his report was excepted to before the court, which sustained the exceptions of appellant to said findings and entered a decree that the money should be paid to appellant, except the sum of $2749.84 paid by appellee, as receiver, for premiums on the policies and interest thereon, which was to be refunded to him. An appeal was taken by appellee to the Appellate Court, and that court reversed the decree of the circuit court and remanded the cause, with directions to enter a decree ordering the money paid to appellee, as receiver. From that judgment of the Appellate Court the cause is brought here by this appeal.

The single question in the case is whether the policies assigned to the cashier, for the bank, were released by the bank taking new notes in renewal and extending the indebtedness from time to time after the assignment. The appellant, widow of Samuel S. Dewees, testified concerning the authority given by her to her husband to pledge the policies, and an argument is made here upon the proposition that she was not a competent witness. That objection was not made before the master or in the

circuit court, and it will not be considered here for the reason that it cannot be made for the first time on appeal. *Doty* v. *Doty,* 159 Ill. 46.

On the other side, it is urged that the answer of appellee did not claim the policies as security for the indebtedness as extended and renewed, and therefore the decree of the circuit court was right and its reversal by the Appellate Court was wrong. In the original answer of appellant her claim was that the assignment was without any good and valuable consideration, and that it was not binding on her. The first amendment to her answer alleged that the indebtedness of her husband should be credited with the proceeds of a lot of cattle, and that the indebtedness was paid. After the evidence had been taken before the master and an order entered that the cause had been heard by the court and taken under advisement, she was permitted to make a further amendment. For the purpose of permitting this amendment, the order of the previous term reciting that the cause was heard and taken under advisement was set aside, and by that amendment she set up the claim of a release by extension of time of payment. As the pleadings then stood she admitted the assignment and claimed a release of the policies, and this was affirmative matter which she was bound to establish to entitle her to the money. If she failed in that, a decree in her favor would be wrong and properly reversed. Besides, we regard the claim to the money stated by appellee in his answer as sufficient.

Taking all the evidence in the record into consideration it proved the following facts: The Central Illinois Banking and Savings Association was a partnership of a considerable number of persons, who issued what they called stock, showing the interest of the partners, and carried on a general banking business. Samuel S. Dewees had some interest as one of these stockholders, as they were called, and was a customer of the bank. On August 19, 1890, he was indebted to the bank, individually and

as a member of the firm of Smith & Dewees, to the amount of $41,142.87. He had been a customer and borrower from the bank, and, under its rules and in accordance with the ordinary custom of banks, his notes were renewed from time to time, about every three months.  The bank was then demanding payment, or security in case it should continue to carry the indebtedness.   There were five policies of insurance upon his life, amounting to the face value of $35,000.   Two of these were payable to his es- tate and the three in. question in this case were payable to his wife, the appellant.   He said that he would give the insurance policies as security if the bank would grant the extension and continue the credit, and he would get his wife to assign these policies.   The two which were payable to his estate were assigned by him and have been collected, amounting to $15,371.60.   He went to his wife, the appellant, and told her that he was indebted to the bank, and that if she would assign the policies "they would not crowd him; would not push him; would extend his time on the note."  She then executed legal and formal assignments of the policies to William E. Veitch and acknowledged them before a notary public.  The officials of the bank and appellant did not see each other or have any negotiation or agreement about the matter, but the business was carried on, on her part, entirely through her husband.   He delivered the policies and assignments to the bank as collateral security to secure the indebtedness then existing or to be contracted thereafter in the course of his business with the bank.   His agreement was that the collateral was to apply on the indebtedness as a whole, as it might exist at any time, covering the notes, which were to be renewed from time to time or divided in any way that might best suit the bank, and without re- gard to the manner in which it was represented, whether by notes then existing, future notes, overdrafts or other- wise.   The insurance companies were notified of the as- signments and assented thereto. The notes were renewed

about every four months. Appellant had no notice of extensions and never gave any consent to them or to renewal of notes, but left the policies where they were with the bank and never paid any premiums or attempted to reclaim them. The policies remained in the possession of the bank and the indebtedness was continued in different forms until August 25, 1893, when the bank suspended, and the indebtedness had then been reduced to $26,826.54. During this time the bank paid the premiums and kept the policies in force, and at the time of the suspension the notes and policies went into the hands of the receivers, who continued to pay the premiums. Dewees died December 19, 1896, and on proofs of his death being made the policies matured.

The transaction with the bank was conducted by appellant through her husband, and, so far as the original contract is concerned, the rights of the parties are to be determined from the law of agency. According to her testimony the express authority given to him was to pledge the policies to secure the then existing indebtedness; but she executed absolute assignments of the policies to Veitch, the cashier, and acknowledged them before a notary, transferring the entire title and interest therein, without any condition or limitation. The assignments were not limited to any particular purpose and were free from any condition. These assignments she delivered to her husband, who took them to the bank and pledged them generally for his indebtedness then existing or which might thereafter exist in the usual course of the business as it had been conducted and was to be conducted in the future. By the law of agency, although she did not give her husband express authority to pledge the policies in the way he did to secure the indebtedness in its continued form, she would be liable if the act was within the apparent authority conferred upon him by her act of delivering the policies to him and making and delivering to him the assignments. To permit her to dispute such au-

thority as she appeared, from her own act, to have given him, would bè to enable him to commit a fraud upon innocent persons and could not be allowed. There was nothing on the face of the assignments which could give the bank notice that the power was less than what it appeared to be, which was to transfer the entire interest or any lesser interest, and it seems to us that she justified the bank, which took the assignments in good faith, in believing that she had given her husband power to pledge them according to his proposal to and agreement with the bank. Under such circumstances she is bound by his act. 1 Am. & Eng. Ency. of Law,—2d ed.—989; *Norwood* v. *Guerdon*, 60 Ill. 253.

We think that other facts should also have weight in determining the rights of the parties. These policies were of no value except as they were kept in force by the payment of premiums, and for more than six years appellant permitted the bank, or its receivers, to pay the premiums and keep the policies in force and retain possession under the assignment which she had made. She did nothing to reclaim the policies, and either gave no attention whatever to keeping them alive, or, if she did, knew that the bank was doing it and making payments on the faith of her assignment. She allowed the bank and the receivers to pay a large sum of money in premiums, covering a period of many years after the first extension of the indebtedness, and we think her conduct would justify an inference that she knew the policies were being used to secure the indebtedness during that time and tacitly assented to such use, and in equity should be estopped from now making a claim that they had been released.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*