[L. A. No. 527.   Department Two.—September 26, 1899.]

PETER ALFERITZ, Appellant, v. H. L. BORGWARDT, Jr., Respondent.

CHATTEL MORTGAGE—DOMESTIC ANIMALS—"INCREASE"—CONSTRUCTION OF CODE.—In section 2955 of the Civil Code, authorizing chattel mortgages on certain domestic animals, "and the increase thereof," the word "increase" imports only the natural increase or offspring of such animals, and does not include the profit arising from the use of the animals by the mortgagor while he remains in possession.

ID.—INCREASE OF SHEEP—WOOL.—A chattel mortgage, including a flock of sheep and 'the increase thereof, does not include the wool sheared therefrom by the mortgagor in possession.

ID.—TITLE NOT PASSED BY CHATTEL MORTGAGE.—Under section 2888 of the Civil Code, which provides that "notwithstanding an agreement to the contrary a lien, or the contract for a lien, transfers no title to the property subject to the lien," a chattel mortgage vests no title in the mortgagee.

ID.—ERRONEOUS DECISION AS TO TITLE—CODE PROVISION OVERLOOKED—CONSTRUCTION OF STATUTE—OBLIGATION OF CONTRACTS.—The decision in *Berson v. Nunan*, 63 Cal. 550, erroneously holding that a chattel mortgage vests title in the mortgagee, until reinstated by performance of the mortgage conditions, was not a judicial construction of section 2888 of the Civil Code (which was overlooked by the court), and does not fall within the rule declared by the federal courts that contract rights acquired under a judicial construction of a statute by a state court will be governed thereby, and cannot be affected by a subsequent change in such construction. A chattel mortgage executed after that decision was given, and before it was overruled, is, subject to the code provision.

ID.—DECISIONS UPON GENERAL LAW AFFECTING CONTRACT RIGHTS—RULE OF FEDERAL COURTS.—The decisions of state courts in regard to general rules of law, although they may affect contract rights, are not subject to the rule laid down by the federal courts as to how far they will be governed by state decisions as to the construction of a state statute, in respect to contract rights acquired thereunder.

ID.—NATURE OF JUDICIAL DECISIONS—AUTHORITY—LATER DECISION TO BE FOLLOWED.—Laws are not made by judicial decisions, and, in so far as they declare the law, they can only declare what it was and is, and cannot enact what it shall be. The court simply determines the existing rights of the parties in the controversy before it, and must always look to the past for its law. Judicial decisions are only persuasive authority for future cases, and may be overruled for cogent reasons; and existing controversies growing out of past transactions should ordinarily be governed by the later decision.

APPEAL from a judgment of the Superior Court of Kern County.  J. W. Mahon, Judge.

The facts are stated in the opinion of the court.

Lyman I. Mowry, and Ahern & Bennett, for Appellant.

The decision in *Berson v. Nunan*, 63 Cal. 550, that title passes to the chattel mortgagee, is the law of this case, the chattel having been executed while that decision was in force and unreversed. It was cited and approved in several cases, prior to the unexpected ruling in *Shoobert v. De Motta*, 112 Cal. 215; 53 Am. St. Rep. 207. (*Beamer v. Freeman*, 84 Cal. 554; *Chittenden v. Pratt*, 89 Cal. 178; *Cardenas v. Miller*, 108 Cal. 250; 49 Am. St. Rep. 84.) The owner of a thing owns all of its products and accessions. (Civ. Code, sec. 732.) The obligation

of the contract which arose under those decisions cannot be impaired by a counter-decision, construing the statute differently. (Pomeroy's Constitutional Law, 7th ed., sec. 592; *Gelpcke v. Dubuque*, 1 Wall. 200; *Douglas v. County of Pike*, 101 U. S. 687; *Olcott v. Supervisors*, 16 Wall. 678; *Taylor v. Ypsilanti*, 105 U. S. 72; *Louisiana v. Pilsbury*, 105 U. S. 295; *County of Ralls v. Douglas*, 105 U. S. 731, 732; *Green County v. Conness*, 109 U. S. 104; *Anderson v. Santa Ana*, 116 U. S. 361; *German Bank v. Franklin County*, 128 U. S. 538; *Marshal v. Elgin*, 8 Fed. Rep. 787; *Barnitz v. Beverly*, 163 U. S. 118.) All potential future products and accessories, such as wool from sheep, and milk, butter and cheese from cows, though not *in esse*, are the subject of grant, and the title thereto potentially passes. (*Van Hoozer v. Cory*, 34 Barb. 12; *Conderman v. Smith*, 41 Barb. 404; *Andrews v. Newcomb*, 32 N. Y. 417; *Trull v. Eastman*, 3 Met. 121; 37 Am. Dec. 126; *Arques v. Wasson*, 51 Cal. 620; 21 Am. Rep. 718.) Section 2955 of the Civil Code of California has been judicially construed to include wool as part of the "increase of sheep." (*Alferitz v. Ingalls*, 83 Fed. Rep. 964.) Section 732 of the Civil Code is entitled, "Increase of property," and expressly includes "all its products and accessions." This section should be construed in connection with section 2955 of the same code.

M. L. Short, and John F. Prior, for Respondent, and Stanton L. Carter, *Amicus Curiae*, also for Respondent.

The "increase of sheep" only includes the progeny or offspring, and not the wool. (Civ. Code, sec. 13; Webster's, Worcester's, Century, Standard, and Encyclopedia Dictionaries, tit. "Increase" and "Product"; Abbott's, Bouvier's, Anderson's, Rapalje's, and Lawrence's Law Dictionaries, tit. "Increase"; 2 Kent's Commentaries, 361; *First Nat. Bank of Santa Ana v. Erreca*, 116 Cal. 81; 58 Am. St. Rep. 133; *Shoobert v. De Motta*, 112 Cal. 215; 53 Am. St. Rep. 207; *Simpson v. Ferguson*, 112 Cal. 180; 53 Am. St. Rep. 201; *Kellogg v. Lovely*, 46 Mich. 131; 41 Am. Rep. 151.) *Berson v. Nunan*, 63 Cal. 550, was not a rule of property. The subsequent decision did not change the law, but simply declared what it was all the time, and is the one to be followed. (*Allen v. Allen*, 95 Cal. 199; *Kenyon v.*

*Welty,* 20 Cal. 637; 81 Am. Dec. 137; Bishop on Contracts, sec. 569.)

TEMPLE, J.—This is an appeal from a judgment entered upon a general demurrer to plaintiff's complaint, and upon his refusal to amend.

In the complaint it is averred that on the seventeenth day of November, 1893, one F. B. Dagany executed and delivered to plaintiff his promissory note for nine thousand dollars, with interest, due six months after date, and, to secure payment of the same, gave him a chattel mortgage, executed and recorded as required by law, upon "five thousand five hundred sheep and the increase thereof, said eighteen horses and the increase thereof, and twenty-four head of neat cattle and the increase thereof." The note is unpaid.

On the 30th of April, 1897, defendant converted to his own use, and wrongfully deprived plaintiff of the use and possession of, forty bales of wool, "which said wool was and is the increase of the five thousand five hundred sheep so mortgaged to plaintiff by F. P. Dagany as aforesaid, and was sheared from said five thousand five hundred sheep and the increase thereof." This is followed by proper allegations of damage and prayer for judgment.

It is assumed on both sides that the wool was not taken from the actual possession of the plaintiff. If any doubt could exist as to the sufficiency of the demurrer to raise the question presented, the point is waived by appellant, who states in his opening brief: "The only question involved in the demurrer is, Does a chattel mortgage of sheep and the increase thereof cover the wool, the product of the sheep?"

In considering the question thus submitted, the statute authorizing chattel mortgages is of primary importance. Does it authorize a mortgage upon sheep, and the wool to be thereafter grown upon and sheared from them by the mortgagor? Not all personal property can be so mortgaged, but only certain specified classes. Section 2955 of the Civil Code, so far as material here, reads as follows: "Mortgages may be made upon the following personal property, and none other: . . . . 16. Neat cattle, horses, mules, swine, sheep, goats, and the in-

crease thereof." Is wool, to be sheared from the sheep by the mortgagor in possession, included in this list? If not so included, and plainly included, when the words are given their general and unrestricted meaning, the lien would not attach to wool, even if it were so nominated in the bond.

In addition to the fact that the presumption is against the right to mortgage personal property, and permission so to do must be clearly found in the statute, it must be admitted that the word "increase," although variously used, has acquired a special meaning when applied to domestic animals. So applied, unless expressly qualified in the context, it invariably means the young of such animals. Counsel has not found, and I venture to say cannot find, in legal literature or elsewhere (save, perhaps, in the mortgages of this class, and in *Alferitz v. Ingalls,* 83 Fed. Rep. 964) an instance where the unqualified use of the word, as applied to such animals, included anything more or meant anything other than the offspring, progeny, or young of such animals. The word is often used in the decisions, and always refers—so far as I can find—to the offspring, and to nothing else. In *Shoobert v. De Motta,* 112 Cal. 215, 53 Am. St. Rep. 207, the word is repeatedly used in reference to such animals, and in every case it means offspring. In that opinion many cases are cited in which the word is similarly used. In many places it is evident that the word would not have been used had the writer been conscious that it comprehended anything other than the young.

Turning to Cobbey on Chattel Mortgages, section 365 et seq., I find that the author uses the phrase "offspring of mortgaged animals" and "increase of mortgaged animals" interchangeably, and the same use prevails in the numerous cases cited in the notes.

In 2 American and English Encyclopedia of Law, under "Animals," I find the word similarly used. The author speaks of "offspring or increase." Numerous cases are cited to the proposition that "increase follows the dam," and "the increase of the increase *ad infinitum*," and also as to the increase as between the mortgagor and mortgagee. It is true that these cases do not directly bear as authority upon the issue here, but such use of the word would be very inaccurate if it were as compre-

hensive as appellant contends, and if it were not true that the word is always so used in reference to domestic stock. In some of the cases cited the mortgages include the "wool and increase." (See *Cox v. Beck,* 83 Fed. Rep. 269.)

It is also to be presumed that when the mortgagor retains the possession of the sheep he expects to make a profit from the sheep in the meanwhile. He certainly expects to make a living from such use and to pay his debt from it; as much so as one who mortgages his farm and retains possession. Upon the subject of use the intendments are the same. This idea is expressed in *Shoobert v. De Motta, supra,* and it is said that, where the increase are not mentioned, the mortgagee might as well claim the wool as the lambs, as each may be the annual profit which the mortgagor in possession is entitled to retain unless the contrary intent is expressed. This reasoning equally applies to the statute. The same clause also authorizes a mortgage upon dairy cows. Did the legislature intend by this language to authorize a mortgage upon butter and cheese to be thereafter produced? I see no difference in principle. Each is in some sense manufactured, and each becomes a merchantable commodity, to be sold separately from the mortgaged property. If the lien extended to it there might be difficulty in determining when it became divested. Would it adhere after the product was sold by the mortgagor and had reached the hands of the consumer? I think there is much difference between the application of the mortgage to the lambs and to the wool. The lambs became at once a part of the flock, and the mortgage may be held to impart notice. Not so as to the wool. When this wool was taken by defendant it may have been in a warehouse with much other wool, and defendant may have purchased from the mortgagor in good faith, unless the mortgage imparts notice.

The word "increase," from *cresco,* to grow, originally meant growth. It has acquired other meanings by use, but some are figurative and others, which at first seem not to be growth, upon examination will be seen to be strictly so. When we speak of the "earth's increase," meaning the annual crops, it is evident that the word is used figuratively. If we speak of interest on money as increase, we refer to the sum of money

at interest which is thereby increased; this is growth. Similarly, when we refer to rents, profits and other gains as increase, it is the fortune of the owner which thereby is made to grow.

When we speak of the increase of a herd of cattle or a flock of sheep, we refer to growth of the herd or flock by addition of new members. The natural increase can only mean the addition of new members by birth. Natural increase is intended by the lease when it speaks of "the increase thereof." The lease does not expressly speak of a flock of sheep, but evidently that was what was meant. If not, the description of the property is clearly insufficient. Otherwise, the lessor is provided with an adjustable description which will fit any band of sheep he may wish to save from creditors. Whether the description is good, even on that theory, I do not decide. The wool does not increase the flock of sheep. Quite possibly, because domestic animals are so frequently considered as herds, the word "increase" has acquired this partially specialized meaning in respect to them, although now it is so understood even when a single animal is spoken of.

I think, therefore, whether we consider the statute or the language of the lease alone, the conclusion would be against the appellant.

Appellant further contends that the title to the property passed to the mortgagee under the terms of his mortgage. At the date of the execution of this mortgage section 2888 of the Civil Code read as now: "Notwithstanding an agreement to the contrary, a lien, or the contract for a lien, transfers no title to the property subject to the lien." But in 1883, when this law was also in force, this court, in discussing the validity of an attachment of personal property which had been thus mortgaged, said: "The title to the furniture passed to the plaintiffs. Under the chattel mortgage it continued vested in them until it was reinstated by the performance of the mortgage conditions." (*Berson v. Nunan*, 63 Cal. 550.) No allusion is made to section 2888, but it is contended that such section was thereby construed to mean exactly the opposite of its express and unambiguous declaration. Certainly, it was not a construction, but a failure to note the statute. But appellant con-

tends that it states the law upon the subject and that law was not changed until the decision of *Shoobert v. De Motta, supra*, in 1896, and in the meantime his mortgage was made. It is said that to apply the rule declared in the last case, rather than that laid down in the first, would be to impair the obligation of contracts. (*Douglas v. County of Pike*, 101 U. S. 687, and many other cases are cited.) In the case named it is said: "After a statute has been settled by judicial construction, the construction becomes, so far as contract rights acquired under it are concerned, as much a part of the statute as the text itself, and a change of the decision is to all intents and purposes the same in its effect on contracts as the amendment to the law by means of a legislative enactment." No rights are acquired here under a statute, in the meaning of that line of authorities, which seem to refer to laws authorizing the government or some subdivision or department thereof to contract certain obligations. Beyond this the cases cited do not go. I hardly think the rule will be applied to decisions of state courts in regard to general rules of law, although they may affect contract rights. At the best, they but lay down a rule for the federal courts as to how far they will be governed by decisions of the state courts in the construction of state statutes.

Laws are not made by judicial decisions. The court simply determines the rights of the parties to the action in that particular controversy. It is no part of its purpose even to declare the law. It simply applies to the controversy the law as it exists when the alleged rights or liabilities accrued. The decision has never been thought to have the force and effect of law except in that special controversy. In other suits it is authority more or less persuasive according to the reasonableness of the rule. Courts have never thought themselves bound by it as they are by a valid statute. And if it is manifestly wrong the community does not act upon it. A lawyer who would have advised a client to rely upon the Berson case *in making* a loan would show his incapacity.

No doubt an appellate court assumes a very grave responsibility when it reverses a former decision which has become a rule of property, or the law of contracts, and, whenever this is done, it must be understood that the court has not only con-

sidered the objections to the former decision, but the evils which may follow from its reversal. The matter is ably discussed in *Hart v. Burnett*, 15 Cal. 530, and the views there expressed have been frequently affirmed.

The *mere* fact that an error has been made in a decision of the supreme court is no reason for perpetuating it, but, in a given case, to correct it may be productive of more evil than to permit it to stand. And, as stated in the above case, justice is not always on the side of him who claims under the erroneous decision. Why should one who has honestly acquired property according to the law of the land lose it because a judge, relying upon imperfect presentation, has erred? Or why should the policy of the government, adopted upon great deliberation, be so defeated? And especially so under a system where a decision was never deemed to have the force and effect of an absolute law. Kent says that a decision solemnly and deliberately made should not be set aside, "except for very cogent reasons, and upon a clear manifestation of error." (1 Kent's Commentaries, 476.) And, we may add, the rule should not then be changed unless the court, after due deliberation, shall conclude that in the interest of justice and of the public the error should be corrected. And as the court can only determine the law as applicable to existing or past contracts and rights this is a conclusion that existing controversies and rights under past transactions should be governed by the law as declared in the later decision. If the supreme court of the United States shall finally go with the appellant here, in holding that the courts are prohibited from reversing an erroneous construction of a state statute because such decision is a law which impairs the obligation of contracts, then the courts can never change the erroneous construction; for a court can only pass upon existing rights and must always look to the past for its law, and, so far as it declares the law, declares what it was and is, but cannot enact what it shall be. I do not think that august tribunal will adopt this view, which if adopted can result only in the perpetuation of error.

The judgment is affirmed.

Henshaw, J., and McFarland, J., concurred.

Hearing in Bank denied.