[S. F. No. 6188. In Bank.—June 2, 1914.]

CARRIE E. BRIDGE et al., Respondents, v. CONNECTICUT MUTUAL LIFE INSURANCE COMPANY (a Corporation), et al., Defendants and ALICE A. TAYLOR, Defendant and Appellant.

LIFE INSURANCE POLICY—ASSIGNMENT AS COLLATERAL SECURITY—RIGHTS OF ASSIGNEE AND ASSIGNOR.—One to whom a policy of life insurance is assigned by another, as security either for his own debt or for the debt of a third person, is entitled to collect from the insurance company the whole amount of the policy when it falls due, if he is still entitled to hold the security.

Id.—Statute of Limitations—Effect of Bar of Debt.—It is immaterial in such case, so far as the right of the creditor to continue to hold the security is concerned, that the obligation on account of which he holds it is barred by the statute of limitations.

Id.—Consideration for Assignment of Policy—Pre-existing Debt.— The assignment of a life insurance policy by the insured and the beneficiary, as security for the payment of a promissory note of the insured given in settlement of his pre-existing indebtedness, is supported by a sufficient consideration.

Id.—Promissory Note—Pre-existing Debt as Consideration—Sureties.—A pre-existing debt is a sufficient consideration for the execution of a promissory note, so far as the sureties thereon are concerned, where the obligation for the pre-existing debt is canceled upon the delivery of the note.

Id.—Payment of Note.—Whether Accomplished by Giving New Note.—The giving of a new note for an old note does not constitute a payment, unless expressly so agreed, but simply operates as an extension of the time of payment, and as soon as the time expires the payee has the right to sue upon the old note.

Id.—Surrender of Old Note—Whether Shows Agreement for Payment.—The mere fact that the old note is surrendered to the debtor at the time of receiving the new note is insufficient to show the existence of such an agreement.

Id.—Assignment of Insurance Policy as Security—Beneficiary as Surety—Release by Extension of Time.—Where a life insurance policy is assigned by the insured and the beneficiary as security for the payment of the promissory note of the insured, the beneficiary becomes a surety of the debtor with relation to the assigned policy, and the taking of a renewal note by the creditor extending the time of payment for any period, without the consent of such surety, releases the policy from the obligation.

Id.—Right to Recover Policy—Limitation of Actions.—The right of the beneficiary to recover the policy on account of such extension of the time of payment of the original note, without the consent of the assignor, accrues at the time of the extension; and if the beneficiary allows the assignee to hold the policy during the full period prescribed by the statute of limitations and thereafter until the time of the death of the insured, without bringing any such action, her right thereto is barred.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order refusing a new trial. J. M. Seawell, Judge.

The facts are stated in the opinion of the court.

Franklin P. Bull, for Appellant.

Thomas E. Haven, and Haven & Athearn, for Respondents.

THE COURT.—In the year 1878 the Connecticut Mutual Life Insurance Company issued to one Charles L. Taylor a policy of life insurance, whereby it agreed to pay his wife, defendant Alice A. Taylor, the sum of three thousand dollars, and accruing profits, upon his death, provided that he and his beneficiary complied with all the terms and conditions of said policy. On January 6, 1895, in settlement of an indebtedness of $2,501.00 then existing on the part of Mr. Taylor in favor of plaintiff Carrie E. Bridge and found to be due her upon a statement of an account, Mr. Taylor made, executed, and delivered to Mr. Bridge for Mrs. Bridge his promissory note, payable to the order of Mrs. Bridge, for $2,501.00, with interest thereon at the rate of one and a half per cent per month from date until paid. As security for the payment of said promissory note and as part of the settlement, the same being executed and delivered contemporaneously with the note, Mr. and Mrs. Taylor and their son, Charles L. Taylor, Jr., executed and delivered to Henry S. Bridge, who was at all times acting as the agent of his wife in the matter, an assignment in writing of said insurance policy, the same purporting to be an absolute transfer of the policy. This assignment was consented to by the insurance company, and was never altered or revoked. On December 8, 1898, a new note was given by Mr. Taylor to Mrs. Bridge, payable one day after date, for $4,806.30, with interest at the same rate, being the amount of principal and accrued interest on the indebtedness evidenced by the first note, none of which had been paid, and the first note was delivered to Mr. Taylor. On October 18, 1902, a new note was given by Mr. Taylor to Mr. Bridge for seven thousand dollars, with interest at six per cent per annum, being the principal and accrued interest due on the second note, none of which had been paid. No part of the principal or interest on the indebtedness evidenced by the original note has ever been paid, unless the same was extinguished by the so-called renewal notes. Said original promissory note was never changed in any respect, except by the renewal thereof as hereinbefore set forth. Mrs. Taylor took no part in either

of said renewals, had no knowledge thereof and never consented thereto.  Mr. Taylor died on April 14, 1908.  There was then due upon the insurance policy the sum of $3,027.39, an amount very much less than the amount due from him to Mrs. Bridge on account of such indebtedness.  The insurance company having refused to pay to Mrs. Bridge the amount due on the policy, because of the conflicting claims thereto, this action was brought on February 10, 1910, by Mrs. Bridge and her husband against the company and Mrs. Taylor to obtain a decree that Mrs. Bridge is entitled to receive the same and awarding it to her.  The company, acknowledging its liability on the policy, paid the amount due, $3,027.39, upon the joint receipt of plaintiff and Mrs. Taylor, and the amount has been deposited to await the determination of the respective rights of Mrs. Bridge and Mrs. Taylor.  The action was therefore dismissed as to the insurance company.  The action was tried as between the other parties and the findings of the trial court were in favor of plaintiffs.  Judgment was thereupon given establishing the right of Mrs. Bridge to receive all the moneys due on said policy, free from any claim of Mrs. Taylor, and decreeing that she recover the same.  This is an appeal by Mrs. Taylor from the judgment and from an order denying her motion for a new trial.

As is substantially said in respondents' brief, the insurance company having admitted its liability and paid over the amount due on the policy to be awarded in accord with the determination by the court of the question which of the two claimants is entitled thereto, the contest is now between two rival claimants, both of whom are actors.

The right of one to whom a policy of life insurance is assigned by another, as security either for his own debt or for the debt of a third person, to collect from the insurance company the whole amount of the policy when it falls due, if he is still entitled to hold the security, cannot be doubted.  The assignee in such a case has the legal title to the policy to such an extent as is necessary to enable him to do this, and the assignor is without any right to maintain any action for the money due thereon, upon the theory that he is the owner thereof.  The assignor's only interest in the policy, "upon that condition of fact, is in what remains of it after the advances, for the security of which it was assigned, have been

satisfied,'' and the assignee ''cannot be made to surrender it'' to the assignor until the advances made by him are repaid. (*Gilman* v. *Curtis,* 66 Cal. 116, [4 Pac. 1094]; see, also, Civ. Code, sec. 3006; *Works* v. *Merritt,* 105 Cal. 467, [38 Pac. 1109]; *Widaman* v. *Hubbard,* 88 Fed. 806; Colebrooke on Collateral Securities, sec. 426; *Puckhaber* v. *Henry,* 152 Cal. 425, [125 Am. St. Rep. 75, 14 Ann. Cas. 844, 93 Pac. 114]; *Hoult* v. *Ramsbottom,* 127 Cal. 175, [59 Pac. 587].)

It can make no difference in so far as the right of the creditor to continue to hold the security is concerned, that the obligation on account of which he holds it is barred by the statute of limitations. That question was fully and carefully considered by this court in *Puckhaber* v. *Henry,* 152 Cal. 425, [125 Am. St. Rep. 75, 14 Ann. Cas. 844, 93 Pac. 114], and decided against the contention of the appellant here. We see no reason why the views expressed in the opinion in that case on that question should be modified or departed from. While recognizing that where the judgment is barred by the statute of limitations, any lien which the creditor holds as security, ''is extinguished'' and the creditor is without any right to take affirmative action to enforce the same, it was held that he may still retain possession of the pledged property, and that the debtor may not in any way interfere with such possession without paying the debt, which has not been satisfied or extinguished. It was held that section 2911 of the Civil Code, ''was not designed to prevent the application of the equitable principle which has always been recognized as warranting courts in refusing to aid the debtor in the recovery of possession of his property from the mortgagee in possession or pledgee . . . without paying his debt.'' It is true that in that case the contest was between the creditor and the administratrix of the estate of the debtor, who had apparently pledged a life insurance policy payable to his personal representatives instead of to some designated person, so that no question as to the rights of one who had pledged his property for the debt of another, and who was, therefore, so far as such property was concerned, a surety, was involved. But we do not see that the distinction is at all material so far as this question is concerned. One who delivers his property in pledge to a creditor as security for a debt of another can be in no better position, in this regard, than the debtor who so delivers his

own property. In each case the property is so delivered as security for the *payment* of the debt, and the equitable principle invoked precludes the *pledgor,* whoever he may be, from retaking possession before the debt is satisfied. "The statute of limitations is a bar to the remedy only, and does not extinguish, or even impair, the obligation of the debtor." (*Spect* v. *Spect,* 88 Cal. 444, [22 Am. St. Rep. 314, 13 L. R. A. 137, 26 Pac. 203].) We are not now considering any question of the release of the pledgor who is only a surety, by reason of some act or neglect of the creditor other than his mere failure to commence proceedings to enforce the obligation within the time required by the statute of limitations. Such a question is presented in this case, and will be discussed later. And, of course, we do not mean to hold that the rights of the parties would not be otherwise than we have stated, if there were stipulation to the contrary in the contract of pledge. In the case at bar, as in *Puckhaber* v. *Henry,* the position of the beneficiary of the policy is that of the pledgor seeking to recover possession of the pledged property from the pledgee, without paying the debt for which it was pledged. "The money paid . . . as proceeds of the policy has merely taken the place of the policy held in possession by the plaintiff, and for all the purposes of this action should be deemed to be in the possession of the plaintiff." (*Puckhaber* v. *Henry* 152 Cal. 425, [125 Am. St. Rep. 75, 14 Ann. Cas. 844, 93 Pac. 114].)

Learned counsel for Mrs. Taylor relies somewhat on what is said in *Faxon* v. *All Persons,* 166 Cal. 707, [137 Pac 919] ; to the effect that the equitable rule that notwithstanding the lien of a mortgage is extinguished by the barring of the debt by limitation, the mortgagor cannot, without paying his debt, quiet his title against the mortgagee, "should not be extended to a case in which the liability to pay the debt does not, in morals and equity, rest upon the plaintiff, or his property." Here the liability to pay the debt did, in morals and equity, rest on the pledgor's property. The case referred to does not assist appellant.

The trial court was amply warranted in concluding that the consideration for the execution of the original promissory note by Mrs. Taylor, and the contemporaneous execution of the assignment of the policy, was the settlement and satisfaction

of the pending account between Mr. Taylor and Mrs. Bridge, and of the right of action of Mrs. Bridge against Mr. Taylor for the money due her from him. Certainly no other consideration was essential, so far as Mrs. Taylor was concerned. (See Civ. Code, sec. 2792.) What is said in *Stroud* v. *Thomas*, 139 Cal. 274, [96 Am. St. Rep. 111, 72 Pac. 1008], as follows, "The contention of the appellant that a pre-existing debt is not a sufficient consideration for the execution of a note, so far as the sureties thereon are concerned, where the obligation for the pre-existing debt is canceled upon the delivery of the new note does not merit discussion. It is well settled that such a consideration is sufficient as a foundation for the promise of the sureties, as well as that of the principals" (citing cases), is conclusive upon this question. The evidence here clearly showed "the substitution of a new obligation between the same parties, with intent to extinguish the old obligation" (Civ. Code, secs. 1530 and 1531).

We are of the opinion that the conclusion of the trial court that no part of the original promissory note to secure which the policy was assigned in pledge has ever been paid, cannot be held to be without sufficient support in the evidence. The claim of appellant in this connection is based entirely on the taking of the so-called renewal notes, and the surrender in each case of renewal of the old note. In *Savings and Loan Society* v. *Burnett*, 106 Cal. 530, [39 Pac. 925]; it is said: "It is the general rule that one executory contract does not extinguish another, It is also the rule that there must be an express agreement or understanding to that effect before another note, bill or check extinguishes and satisfies the indebtedness evidenced by an earlier one. Without multiplying authorities upon these propositions it is sufficient to refer to *Comptoir D'Escompte* v. *Dresbach*, 78 Cal. 15, [20 Pac. 28], where the California cases are collated." In the case referred to it is said, at page 20: "It has been repeatedly held by this court that the acceptance of a note for a debt does not discharge the debt unless expressly agreed to be payment; that in such case the right of action on the debt is suspended until the maturity of the note given, and suit may be brought on the original debt in case of the nonpayment of the accepted note (citing numerous cases). The language used in the opinion is, unless it is *expressly agreed* that the note is ac-

cepted as payment, it is not payment, and the debt is not extinguished.'' In *Welch* v. *Allington,* 23 Cal. 322, this rule was applied, the court saying, among other things: "The law will not presume such an agreement, and it must be proved by the party relying upon it. The taking of the new note operated as an extension of the time of payment of the old note; and as soon as that extended time had expired, the plaintiff had a right to bring his action upon the old note, if the amount was not then paid.'' The mere fact that the old note was surrendered to the debtor at the time of receiving the new note was held to be insufficient to require a conclusion that there was such an agreement in both the case last cited and in *Savings and Loan Society* v. *Burnett,* 106 Cal. 529, 530, [39 Pac. 925]. In *Sather Banking Co.* v. *Briggs,* 138 Cal. 733, [72 Pac. 355], it was said: "The general rule is that the renewal of notes does not amount to payment. (*Savings Bank* v. *Central Market Co.,* 122 Cal. 33, [54 Pac. 273].) The presumption is that they were not so taken.'' (See, also, *Merchants Bank* v. *Bentel,* 166 Cal. 473, [137 Pac. 25] ; decided December 3, 1913.) In the case at bar there was absolutely no evidence to show any agreement to the effect stated, other than the surrender of the old notes, and this, in the light of the evidence as to the circumstances of the giving of the new notes, was insufficient to require a conclusion that there was any agreement to the effect that the new notes were received by way of payment. Each of the new notes was apparently only a "renewal note,'' as found, given solely to avoid the bar of the statute of limitations, for the amount of principal and accrued interest, then due.

It is claimed that Mrs. Taylor was a mere surety in so far as the assigned policy was concerned, and that her property was released by the change in the original obligation for which the policy was assigned as security effected by the taking of the renewal notes. The first of these renewal notes was given, as we have seen, on December 8, 1898, and was payable, "one day after date.'' The second was given on October 18, 1902, and, it will be assumed, was also payable "one day after date.'' We do not think it can be seriously questioned that she did stand in the position of a surety of a debtor with relation to the property assigned, and that any change in the contract of the principal which would discharge a surety,

would operate to release and discharge such property held as collateral. (See Jones on Pledges and Collateral Securities, sec. 517a and cases there cited. *Valentine* v. *Banking Co.,* 133 Cal. 191, 195, [65 Pac. 381]; *Sather Banking Co.* v. *Briggs,* 138 Cal. 724, 729, [72 Pac. 352]; *Parke & Lacey Co.* v. *White River etc. Co.,* 110 Cal. 658, [43 Pac. 202]; *O'Mara* v. *Nugent,* 37 N. J. Eq. 326; Civ. Code, sec. 2831.) The property assigned occupied the position of a surety or guarantor, "and anything that would discharge an individual surety or guarantor who was personally liable will, under similar circumstances, discharge such property." (*Valentine* v. *Banking Co.,* 133 Cal. 191, [65 Pac. 381].) "A surety is exonerated—1. In like manner with a guarantor." (Civ. Code, sec. 2840, subd. 1.) And section 2819 of the Civil Code, provides that "a guarantor is exonerated, except so far as he may be indemnified by the principal, if by any act of the creditor, without the consent of the guarantor, the original obligation of the principal is altered in any respect, or the remedies or rights of the creditor against the principal, in respect thereto, in any way impaired or suspended." While mere delay on the part of a creditor to proceed against the principal, or to enforce any other remedy, does not exonerate a guarantor (Civ. Code, sec. 2823), it is well settled that if he grants the debtor an extension of time within which to pay, under such circumstances as to impair or suspend his right to proceed against the debtor in accord with the terms of the original obligation, we have such an alteration of the original obligation as will release the surety, if the same is without his consent. (See *Tuohy* v. *Woods,* 122 Cal. 665, [55 Pac. 683]; *Daneri* v. *Gazzola,* 139 Cal. 416, [73 Pac. 179]; *First National Bank* v. *Harris,* 7 Wash. 139, [34 Pac. 466]; *O'Mara* v. *Nugent,* 37 N. J. Eq. 326.) The taking of a new note payable at any specified time after the date, is at least, as we have seen, an extension of the time of payment to the time so specified (*Welch* v. *Allington,* 23 Cal. 322; *Koutz* v. *Vanclief,* 55 Cal. 345), and suspends the right of the creditor to enforce his claim until that time. (See, also, 7 Cyc. 875, 876, 891, 902.) The fact that the extension is for one day only is immaterial. "If there was a consideration, the law will not attempt to measure the amount thereof" (*Whelan* v. *Swain,* 132 Cal. 391, [64 Pac. 561]). To what extent the surety is in fact injured

is not a legitimate subject of inquiry.   (See *Tuohy* v. *Woods*, 122 Cal. 665, [55 Pac. 683].)

Plaintiffs' claim, based upon *Dewes* v. *Osborn*, 178 Ill. 39, [52 N. E. 942], that Mrs. Taylor was not a surety, but a principal acting through her husband as her agent, cannot be upheld in view of the findings of the trial court which, of course, are conclusive on them on this appeal by Mrs. Taylor. These findings show a plain case of simple suretyship so far as she was concerned, a debt of Mr. Taylor alone, the giving of a note therefor by Mr. Taylor alone, and the execution and delivery of the assignment of the policy by Mr. and Mrs. Taylor ''as security for the payment of said promissory note.'' In the case relied on by learned counsel, the agreement made at the time of the pledge by the husband clothed with ostensible authority to deal with the policy as he saw fit, contemplated all that was done, and the question was one to be determined by the law of agency.   Whatever may be said as to the effect of the evidence in this case regarding the execution and delivery of the assignment, the findings show simply what we have stated, and we have no question of agency thereunder.

In response to Mrs. Taylor's claim in this regard, set up in her pleading denominated her ''amended answer and amended cross-complaint,'' filed August 18, 1911, as well as to other claims made by her, plaintiffs interposed the defense that the claim was barred by certain provisions of our statute of limitations, viz.: Subdivision 1 of section 339 and section 343 of the Code of Civil Procedure, and the trial court found in accord with this defense.   We may assume that section 343, of the Code of Civil Procedure, which prescribes a limitation of four years after the cause of action shall have accrued, is the provision of our statute of limitations applicable to such a case as this, the limitation in subdivision 1, section 339 of the Code of Civil Procedure, being only two years.

The first renewal note was given, as we have seen, on December 8, 1898, and the second on October 18, 1902.   Obviously if Mrs. Taylor's rights because of the extension accrued at the time thereof, so that she might then have legally asserted the same, they became barred at least as early as December 8, 1902, and October 18, 1906, respectively.

The evidence shows without conflict that the insurance policy was delivered to Mr. Bridge at the time of the giving

of the original note and the assignment of the policy absolute in its terms, and that it remained in his possession, he claiming the right to hold the same as security for the debt due his wife, until, after the death of Mr. Taylor, the insured, he made the claim against the insurance company. He then surrendered the policy to the insurance company.

No sufficient reason is suggested why Mrs. Taylor's right to recover the policy on account of the extensions of the time of payment of the original note did not accrue at the time of such extensions. Such extensions, according to the contention of her counsel, each at once released the policy, so far as she was concerned, from any claim under which it could legally be held by plaintiffs as security for the payment of her husband's debt. She was thenceforth entitled to assert her right in this behalf by action. During the full period prescribed by the statute of limitations and thereafter to the death of her husband, plaintiffs continued to hold the same under claim of right and adversely to her, with no claim whatever on her part that they were not entitled so to do. The trial court found, it is true, that she took no part in either of the renewals, "and had no knowledge thereof," and that "said renewals were made without her knowledge or consent." But we think that all this is entirely immaterial in so far as any question in connection with the statute of limitations is concerned. There is nothing in either the findings or the evidence to warrant the application of the rule discussed and applied in *Lightner Mining Co.* v. *Lane,* 161 Cal. 689, [Ann. Cas. 1913C, 1093, 120 Pac. 771], to the effect that "a fraudulent concealment of the fact, upon the existence of which the cause of action accrues, is a good answer to the plea of the statute of limitations." There is nothing in this case to warrant a conclusion of anything in the nature of a fraudulent concealment. Ordinarily, of course, the time when the cause of action accrues marks the beginning of the running of the statute of limitations. There is nothing here to take the case from the operation of this general rule. We are of the opinion that the findings of the trial court to the effect that Mrs. Taylor's claim in this behalf is barred by certain provisions of the statute of limitations must be held to be sustained by the evidence.

We see no force in the claim that the judgment is in violation of any provision of the federal constitution. The claim of appellant in that connection appears to be substantially that the doctrine of *Puckhaber* v. *Henry,* 152 Cal. 425, [125 Am. St. Rep. 75, 14 Ann. Cas. 844, 93 Pac. 114], cannot be held applicable to this case without depriving her of vested rights, in that prior to that decision it was declared by our decisions that a pledgor of property could retake the same from the pledgee without paying the debt for which it was pledged as soon as the debt itself was barred by the statute of limitations, the lien of the pledge being extinguished by the lapse of the time which bars the principal obligation. (Civ. Code, sec. 2911.) That a pledgee could not retain the pledged property after the lapse of such time was declared in *Mutual L. Ins. Co.* v. *Pacific Fruit Co.,* 142 Cal. 477, [76 Pac. 67], and possibly in *Conway* v. *Supreme Council,* 131 Cal. 437, [63 Pac. 727], both of which cases were decided subsequent to the giving of the pledge here involved. *Puckhaber* v. *Henry,* disapproving the former of these cases and distinguishing the latter, was decided December 2, 1907. There is no claim that any such rule was declared by any decision prior to *Conway* v. *Supreme Council,* 131 Cal. 437, [63 Pac. 727]. It is obvious therefore that there is no basis in fact for any claim that at the time the contract of pledge was entered into the doctrine announced in the cases referred to became a part of the contract of the parties, even if such a situation would have existed had the decisions referred to been made prior to the contract of pledge, a matter that we by no means concede. (See *Allen* v. *Allen,* 95 Cal. 184, [16 L. R. A. 646, 30 Pac. 213]; *Alferitz* v. *Borgwardt,* 126 Cal. 201, [58 Pac. 460].) It is certainly clear that the doctrine of the cases just cited is applicable to the claim of learned counsel for Mrs. Taylor that she is entitled under the federal constitution to prevail by reason of decisions of this court rendered subsequent to the making of the contract of pledge.

The judgment and order denying a new trial are affirmed.

Rehearing denied.

Beatty, C. J., does not participate in the foregoing.