Edmund Brenner and Ellie Brenner, Plaintiffs-Appellants, v. Hamilton W. Franke, Lillian B. Franke, Herbert O. Gerhardt, Rita E. Gerhardt, Cora M. Petri, Florine Dungey, Individually and as Executor of Estate of J. Willard Dungey, Deceased; East Side Express, Inc.; Belleville National Bank, Cross-Complainant; Miller Wholesale Grocery Co.; Carl B. McBride, and Roy L. Eidman, Defendants-Appellees.

Term No. 58–F–27.

Fourth District.

May 23, 1958.

Released for publication August 6, 1958.

203

Farthing & Farthing, of Belleville, for plaintiffs-appellants.

Turner, Holder & Ackermann, of Belleville, for defendants-appellees, and Wilbur E. Krebs, of Belleville, for cross-complainant and appellee.

PRESIDING JUSTICE CULBERTSON delivered the opinion of the court.

This is an appeal from a decree of the Circuit Court of St. Clair county, Illinois, dismissing plaintiffs, Edmund Brenner and Ellie Brenner, complaint for want of equity and ordering foreclosure of the cross-complaint of defendant, Belleville National Bank. Plaintiffs had sought foreclosure of a $6,000 note and mortgage on certain property, dated July 6, 1954, made by the owners of the property. Belleville National Bank, in a cross-complaint, sought foreclosure of an existing $6,500 prior mortgage, dated January 10, 1952, on the property.

The facts in the record disclose that Ed. P. Petri during his lifetime conducted an insurance and real estate business, including the sale of real estate mortgages, and that at the time of his death his son-in-law, J. Willard Dungey, was associated with him as a partner. The defendant owners of the commercial property, as mortgagors, gave their note and mortgage to Dungey on July 7, 1954. The note was made payable to "J. W. Dungey, Trustee," and was in the principal amount of $6,000. A mortgage was also given to Dungey to secure the note, but the signatures of the mortgagors were not acknowledged in the mortgage. An assignment was made by Dungey to the plaintiffs.

205

Prior to that time plaintiffs had purchased mortgages from Petri during his lifetime. It was a custom of Dungey, when he had a mortgage for sale, to call the plaintiff Edmund Brenner, and Brenner would come in and pay for it. If there was a prior mortgage, it would be paid off. The Agency collected the payments on the mortgages and entered the payments in their cash book and the mortgage book, computed the interest, and at the month's end Brenner would receive the amount due him. There was a purchase of at least three investments through the Petri Agency by the plaintiffs prior to the purchase of the note and mortgage in question.

Three monthly installments were paid on the note in question by Dungey, but not by the defendants. Defendant mortgagors had no knowledge that these payments were made to the plaintiffs and the plaintiffs did not inquire of defendant mortgagors if they had made these payments but accepted them as payments by defendant mortgagors. It appears that Dungey used the $6,000 for his personal benefit or for the benefit of the partnership, and did not follow the directions of the mortgagors as to the use of the proceeds of the sale of the mortgage. Plaintiff Brenner stated that at the time he got the assignment of the mortgage he knew that the $6,000 was to be used to pay the bank's first mortgage, and if any money was left it was to be spent on repairs to the mortgaged property. He was advised by Dungey at that time that the Belleville National Bank had a first mortgage lien on the property. He also stated that he expected the first mortgage to be paid and released, and the title brought up to date. He stated he called Dungey at least once a week from the date of the purchase of the note and mortgage until Dungey's death, each time requesting him to have the mortgage recorded and the title brought up to date. Dungey died November

206

16, 1954, and actual physical possession of the mortgage was not obtained by plaintiff Brenner until February 16, 1955.

The case was tried before the Master and his findings and conclusions were affirmed by the Trial Court. The Trial Court, in its decree, observed that this action was not a suit at law on a negotiable instrument, but was a proceeding in equity to foreclose a mortgage, a non-negotiable instrument, and must be controlled by equitable principles. Plaintiffs in this case contended that Dungey was the agent of mortgagors. When the defendant mortgagors gave Dungey their note it was made payable to him, not in his individual capacity, but as "trustee." The note clearly recited it was secured by a "first mortgage."

The evidence indicates that the dealings of both parties with the Petri Agency and with Dungey were at "arm's length." The mortgagors had executed the $6,000 note and mortgage to Dungey as trustee, and directed him to sell them. On principle, the only duty which the plaintiffs, as purchasers, had was to find out whether Dungey as trustee had authority to sell the mortgage. Plaintiffs inquired and verified that this authority existed. Thereafter an embezzlement occurred of mortgagors' funds.

██ It is difficult to conclude that any equities existed in favor of mortgagors as against plaintiffs at the time plaintiffs bought and paid for the mortgage and note. There was a contention that Dungey was the plaintiff agent, but the record does not sustain this contention. Although there were three previous purchases of notes and mortgages by plaintiffs from the Agency, these purchases were handled as business transactions and not on the basis of an authorization of an agency which would make plaintiffs responsible for the acts of the agent. To agree with the conclusion of the court below would require that we impose a

207

duty on the mortgagors to see that the $6,000 was paid out in accordance with the mortgagors' directions given to Dungey, which directions were unknown and not communicated to plaintiffs. Plaintiffs did not leave money with the Agency to invest for plaintiffs. They simply paid $6,000 for a note and mortgage. They determined that Dungey had authority to sell the note and mortgage and to release the bank's existing mortgage by paying what the mortgagors owed. The fact that this was not accomplished in turn gave plaintiffs no equitable position as against the bank, first mortgagee. Plaintiffs requested of Dungey the delivery of the mortgage and a release from the bank, and title papers, every week until Dungey died on November 16, of 1954. They got the mortgage itself at the Agency the following February.

██ In absence of an affirmative showing to the contrary the mortgagors would be bound to plaintiffs by both the note and mortgage. The note and mortgage were given to the broker to sell and he sold them the next day for full value. His fraudulent conversion of the money would ordinarily be no defense on the mortgage (Dewees v. Osborne, 178 Ill. 39; Wolf v. Matusak, 288 Ill. App. 281). The consent to the assignment by the mortgagors would ordinarily eliminate any defense and would estop them to deny the agency (Wolf v. Matusak, supra).

██ The money which was received as proceeds of the sale of the note and mortgage in the hands of the agent was money which belonged to the principal, the mortgagors (Blair v. Sennott, 134 Ill. 78). The use of the designation "trustee" would impose an obligation upon the plaintiffs to find out whether Dungey had authority to sell. This the plaintiffs ascertained and such authority did in fact exist. There was no requirement that they confer directly with the mort-

208

gagors with reference to the note and mortgage, even though they lived in the same community (Kennell, Sr. v. Herbert, 342 Ill. 464). They were not required to give notice to the mortgagors of such assignment or purchase. The unacknowledged mortgage was a valid contract except as to the homestead interest (Ogden Building & Loan Ass'n v. Mensch, 196 Ill. 554). Endorsement in blank made title to the note pass by delivery.

 The basic problem for consideration is whether plaintiffs had a duty to see that the $6,000 was properly applied by Dungey who was broker for the mortgagors. In Seaverns v. Presbyterian Hospital, 173 Ill. 414, the court pointed out that no equities exist when mortgagors ask a broker to sell a note and mortgage for them and the defalcation of the broker is no defense. The wrongdoing was committed by Dungey, the broker, into whose hands the mortgagors had placed the note and mortgage. Where one of two innocent parties must suffer the loss must fall on the one who makes the loss possible or whose agent occasioned the loss (Mann v. Merchants' Loan & Trust Co., 100 Ill. App. 224).

In the case before us the mortgagors gave Dungey the note and mortgage to sell, and borrowed the abstract of title from the bank to carry the action into effect. They relied on Dungey's statement that he had not been able to get a prospective purchaser, but did not get the abstract until February after Dungey's death. Dungey, as trustee, was the only payee in the note and the only mortgagee named in the mortgage. Parties involved, plaintiffs and the mortgagors, did not know each other until they met in the bank and plaintiff Brenner told Franke that plaintiffs owned the mortgage. As we have indicated, although the mortgagors are also innocent in the case, they must

suffer the loss since they made the loss possible. Plaintiffs apparently did everything the law requires of them and owed no duty to seek out the mortgagors, or to see that the money was properly applied.

 The decree, therefore, should have been entered foreclosing both mortgages and assessing all costs, including plaintiffs' attorneys fees, as against the mortgagors. Appellants in this court likewise have taken exception to the allowance of an attorney's fee for the attorney for the appellee bank, in the sum of $425, on the ground the indebtedness ultimately due to the bank had been reduced to $881.07. The actual indebtedness for which foreclosure was instituted was $5,591.80, and the ultimate debt was reduced only by reason of a fire loss subsequent to the hearing before the Master and an insurance settlement which reduced the net amount due. We find no basis for setting aside such fee as unreasonable.

The decree of the Circuit Court of St. Clair county will, therefore, be reversed and this cause will be remanded to such court with directions to proceed in accordance with the views expressed in this opinion.

Reversed and remanded, with directions.

BARDENS and SCHEINEMAN, JJ., concur.